UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM E. MIKE,<br>         Plaintiff, | : | |
| | : | |
| | : | |
| V. | : | CASE NUMBER:  3:02 CV 2239(DJS) |
| | : | |
| SAFECO INSURANCE COMPANY<br>OF AMERICA,<br>         Defendant. | : | |
| | : | MARCH 14, 2005 |
| | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 of this District, SAFECO Insurance Company of America ("Safeco" or "Defendant") respectfully submits the following Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment dated February 7, 2005.  In his Motion for Summary Judgment, Plaintiff claims that he is entitled to judgment as a matter of law under the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA") because Safeco did not pay him overtime compensation even though he performed the non-exempt duties of an automobile damage appraiser.  Plaintiff also claims that he is entitled to judgment as a matter of law on his claim for liquidated damages under the FLSA and CMWA.

As the following demonstrates, Plaintiff is not entitled to summary judgment because there are questions of fact regarding his job duties and the degree of discretion and independent judgment which he exercised in performing his job duties.  Despite Plaintiff's continued efforts to force the facts of this matter into cases addressing the non-exempt status of automobile damage appraisers such as <u>Reich v. American Int'l Adjustment Co., Inc.</u>, 902 F.

Supp. 321 (D. Conn. 1994), <u>In Re Farmers Insurance Exchange Claims Representatives'</u> <u>Overtime Pay Litigation</u>, 336 F. Supp. 2d 1077 (D.Or. 2004), and <u>Robinson-Smith v. GEICO</u>, 323 F. Supp. 2d 12 (D.D.C 2004), Plaintiff was not an automobile damage appraiser.

Plaintiff was employed as a Claims Representative who <u>adjusted</u> insurance claims – this is confirmed by Plaintiff's own Declaration of William E. Mike in which Plaintiff attests that in addition to inspecting and estimating physical damage to automobiles, he conducted scene investigations, obtained recorded statements from witnesses, participated in litigation on behalf of Safeco and conducted settlement negotiations with claimants, customers and attorneys. Plaintiff's Declaration regarding these additional non-damage appraiser duties is confirmed by his own deposition testimony, by the attached affidavit of Plaintiff's supervisor, David Kabara, and by the attached deposition testimony of Paul Barry, Scott Ables and William Lebo.[1]  Thus, the basic premise of Plaintiff's Motion for Summary Judgment – that he was employed as an automobile damage appraiser who performed only a narrow range of automobile damage appraiser duties as described in <u>AIAC</u>, <u>Farmers Insurance</u> and <u>Robinson-Smith</u> – is contradicted by his own admissions and by the statements of others at Safeco.  The facts of this matter, when viewed in the light most favorable to Safeco, establish that Plaintiff performed the duties of an insurance claims adjuster, which is a position courts have repeatedly found fits comfortably within the administrative exemption.

I.     BACKGROUND

In his Motion for Summary Judgment, Plaintiff continues his efforts to attempt to fit the facts of this case into a line of cases holding that automobile damage appraisers are non-

---

[1]  The affidavits, deposition testimony, unreported cases and other materials cited herein are attached to the Affidavit of Margaret J. Strange filed simultaneously herewith.

exempt. Plaintiff first advanced this argument in his Motion to Proceed as Collective Action dated June 9, 2003; he advanced this claim again in his Motion for Class Certification dated September 5, 2003. Plaintiff also made the same argument to the Second Circuit in his appeal in July 2003 under the collateral order doctrine and in his appeal in August 2004 under Rule 23(f). Plaintiff's claim has been denied at every step of this litigation.[2]

Early on, Plaintiff relied on Judge Covello's decision in AIAC and claimed that he performed the same duties as the "automobile damage appraisers" described in that case. Now, in his Motion for Summary Judgment, Plaintiff relies on two additional cases, Farmers Insurance and Robinson-Smith, as further support for his claim that he is entitled to judgment as a matter of law because he performed the same limited automobile damage appraiser duties described in those cases.

In his Motion for Summary Judgment, Plaintiff accurately summarizes the law governing the non-exempt status of automobile damage appraisers. Both the Department of Labor and various courts have recognized for years the distinction between automobile damage appraisers and insurance claims adjusters. Indeed, this Court recognized this distinction itself in Mike v. Safeco, 274 F. Supp. 2d at 217-18 ("Application of the administrative exemption to insurance company employees charged with various aspects of claims handling has apparently been fertile ground for litigation, with varying results as applied to specific factual scenarios.").

---

[2] Much of Plaintiff's Motion for Summary Judgment is devoted to his argument that Safeco employed a class of individuals who performed solely automobile damage appraisal duties. (Mot. Summ. Judg., pp. 2-6.) This claim has been rejected twice by this Court, Mike v. Safeco, 274 F. Supp. 2d 216 (D. Conn. 2003) (denying Plaintiff's motion to proceed as a collective action under the FLSA), and Mike v. Safeco, 223 F.R.D. 50 (D. Conn. 2004) (denying Plaintiff's motion to proceed as a class action under Rule 23), as well as by the Second Circuit in Plaintiff's appeals under the collateral order doctrine and Rule 23(f). Rather then re-hash these issues already briefed extensively by the parties and decided by the Court, Safeco's Opposition Memorandum focuses on Plaintiff's individual claim that he is entitled to unpaid overtime wages because he performed the non-exempt duties of an automobile damage appraiser.

Plaintiff is not entitled to summary judgment, however, because he performed the job duties of a Claims Representative and not simply those of an automobile damage appraiser. In addition to the non-exempt automobile damage appraiser duties described in AIAC, Farmers Insurance and Robinson-Smith, Plaintiff, by his own testimony, including his most recent Declaration of William E. Mike (attached as Exhibit A in support of his Motion for Summary Judgment), performed a variety of exempt insurance claims adjuster duties.

As set forth in more detail below, the Court should deny Plaintiff's Motion for Summary Judgment because: 1) even assuming that Plaintiff's job duties were strictly limited to appraising damaged automobiles, which they were not, his analysis of the second prong of the short test applicable to the administrative exemption is incorrect; and 2) there are questions of fact regarding the nature and substance of Plaintiff's job duties, including the degree of discretion and independent judgment which he exercised in performing his duties. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

A.    Plaintiff's Commencement Of Employment With Safeco

Plaintiff commenced employment with Safeco on or about April 3, 2000 as a Claims Representative.[3] (Declaration of William E. Mike, ¶¶ 3, 4 (hereinafter cited as "Mike Dec., ¶ __."); Affidavit of Margaret J. Strange, Ex. 1 (hereinafter cited as "Strange Aff., ¶ __."); Pl. Dep. I, p. 28.)[4] Plaintiff was assigned to work in the field where he was responsible for investigating, handling and resolving automobile damage claims. For the first two and a half months of his employment, Plaintiff attended training classes at Safeco's office in New Britain.

---

[3]    A copy of Plaintiff's Offer Letter is attached to the Affidavit of Margaret J. Strange as Exhibit 1.

[4]    The transcript of the first day of Plaintiff's deposition conducted on June 3, 2003 is referenced herein as "Pl. Dep. I, p. __." A copy of the pertinent portions of the transcript of Plaintiff's deposition testimony is attached to the Strange Affidavit as Exhibit 2.

Following his training, Plaintiff worked out of his house.  (Pl. Dep. I, pp. 103-04.)  After approximately three to four months, Plaintiff was assigned a geographical territory which consisted of the northeastern corner of the state.  (Pl. Dep. I, pp. 28-29.)

      B.    <u>Plaintiff Inspected And Appraised Physical Damage To Automobiles</u>

As a Claims Representative in the field, one of Plaintiff's duties was to inspect and estimate physical damage to automobiles.  According to Plaintiff, he "performed all aspects of auto damage claims . . . including . . . the photos, the documentation, the payments, the supplements, the phone calls, the problems."  (Pl. Dep. I, p. 112; Mike Dec., ¶ 17.)  When a claim was assigned to him, Plaintiff first contacted the claimant, drove to the vehicle, inspected the damage and took photographs of the damage.  (Pl. Dep. I, pp. 39-40, 53-54; Mike Dec., ¶ 17.)  He then used his laptop computer with a software program called Pathways to prepare an estimate by calculating the cost of the parts, labor and other aspects of the repair job.  (Pl. Dep. I, p. 53; Mike Dec. ¶ 17.)

Plaintiff then negotiated the cost of repair with the shop owner and vehicle owner. (Pl. Dep. I, pp. 38-39.)  This required Plaintiff to determine, for example, whether the part could be repaired, or whether it had to be replaced.  (Pl. Dep. I, pp. 63-64; Mike Dec., ¶ 17.)  If the part had to replaced, Plaintiff determined whether to use a brand new factory part, an aftermarket part or an LKQ part, which is a used factory part.  (Pl. Dep. I, pp. 38-41, 62-63; Mike Dec., ¶ 17.)

Plaintiff had an authority level of up to $10,000 to reach the agreed cost of repair with the shop owner and to settle claims with the vehicle owner.  (Mike Dec., ¶ 27.)  Plaintiff testified that in resolving claims, "[e]verything that we did had to be an agreement" with the repair shop and the vehicle owner.  (Mike Dep. I, p. 39.)  Any payment above Plaintiff's authority level had to be approved by his supervisor, David Karbara.  Plaintiff did not recall that

his supervisor ever rejected paying a claim above his authority level. (Pl. Dep. I, pp. 44-45; Mike Dec., ¶ 27.) It was also Plaintiff's job to inform customers about the use of certain parts and "again, if they're not happy with that, then I adjust what has to be done to take care of it." (Mike Dep. I, p. 43.) Plaintiff further testified that his job required adaptability, communication skills, decision-making, initiative, leadership and persuasiveness. (Mike Dep. I, p. 171.) Plaintiff had to identify problems, recognize when he needed additional facts and obtain the necessary information to resolve the claim and ensure that the customer was satisfied. (Mike Dep. I, p. 174.)

As part of his automobile damage appraisal duties, Plaintiff investigated claims. (Pl. Dep. I, p. 157.) Plaintiff was responsible for finding hidden damage, analyzing when a claim included unrelated damage and for determining when a second inspection was required. (Pl. Dep. I, pp. 58, 78-79.) This required Plaintiff to made coverage determinations. (Pl. Dep. I, p. 146.) Plaintiff was also responsible for determining if a car was repairable or if it was a total loss. (Pl. Dep. I, pp. 117-20.) Plaintiff also had to determine if an appearance allowance was warranted or if he could apply a betterment deduction to the claim. (Pl. Dep. I, pp. 65-66, 154-56.) Plaintiff was also responsible for identifying fraudulent claims and for referring those claims to another department for investigation. (PL. Dep. I, pp. 148-51.)

C.     Plaintiff Performed Additional Duties Adjusting Insurance Claims

Plaintiff performed other duties in addition to inspecting and estimating physical damage to automobiles. These additional duties are described in a Safeco training manual entitled "ORG 401 – Introduction to the Claims Rep Position." (Mike Dec., ¶¶ 10-12.)[5] These

---

[5] According to Plaintiff's Declaration, "My position with Safeco was the position described on page M0002746 of the "ORG 401" module as "Physical Damage (PD) Rep." (Mike Dec , ¶ 11.) In his Declaration, Plaintiff further

additional duties required Plaintiff to do far more than merely inspect and estimate automobile damage. For example, as a Claims Representative in the field, Plaintiff was expected to "play[] a unique role in the [claims] <u>adjustment</u> process and [was] a vital part of Safeco. . . . [T]he claims adjustment process consists of <u>investigation, evaluation, and settlement</u>." (Ex. F, pp. M0002746, M0002748; emphasis added.) Plaintiff's position was "an integral part of the claims process. Safeco relies on the Field Reps to keep in contact with customers, investigate and evaluate claims that require personal inspection, and act as the 'eyes and ears' of the company." (Ex. F, pp. M0002750.)

When Plaintiff received an assignment, "the entire claim file" was assigned to him and he was responsible for handling every element of the claim including "making contact, taking statements, preparing estimates, reporting the file, and negotiating settlements." (Ex. F, p. M0002746.) In handling a claim, Plaintiff testified that he inspected and estimated physical damage, conducted scene investigations, interviewed witnesses, obtained recorded statements, attended legal proceedings such as hearings, trials and depositions and conducted face-to-face negotiations with claimants, customers and attorneys. (Mike Dec., ¶¶ 11, 12; Ex. F, p. M0002747-M0002749.)

           1.     Scene Investigations

During the last year to year and a half of his employment, Plaintiff conducted scene investigations. (Pl. Dep. I, p. 122.) Scene investigations required Plaintiff to investigate the scene of an accident. As noted in Safeco's training manual, "Earlier in this training you

---

testified, "The ORG 401 module accurately describes my position under the heading of 'Rep Duties' on pages M0002747 through M0002749." (Mike Dec., ¶ 12.) Plaintiff repeats this claim on pages 6 and 7 of his Motion for Summary Judgment. A copy of the ORG 401 training manual is attached to Plaintiff's Motion for Summary Judgment as Exhibit F. To minimize confusion, Safeco's Opposition Memorandum cites to the ORG 401 training manual attached as Exhibit F to Plaintiff's Motion for Summary Judgment.

learned that the claims adjustment process consists of investigation, evaluation, and settlement. Investigation is one of the most important elements of the process since the evaluation and settlement cannot proceed properly if the investigation is not sufficient.  <u>Field Reps are often called upon to lead or assist in the investigation of an accident scene.</u>"  (Ex. F, p. M0002748; emphasis added.)

In conducting a scene investigation, Plaintiff was required to diagram the scene, identify important features, locate sight obstructions, document road conditions, measure road diameter and attempt to determine the casual factors of the accident.  (Ex. F, p. M0002748; Pl. Dep. I, p. 122.)  He was responsible for photographing the scene to establish a photographic "chain of events" which lead to the accident.  (Ex. F, p. M0002748.)  Plaintiff was also responsible for canvassing the area around the accident scene to locate witnesses to the accident. When canvassing a neighborhood for witnesses, Plaintiff looked for individuals who were present when the accident occurred and who had firsthand knowledge of the events leading to the accident. (Ex. F, p. M0002748.)

2.    <u>Recorded Statements</u>

Plaintiff testified that as part of the investigation process, he also interviewed witnesses and obtained written or recorded statements.  As set forth in Safeco's training manual, "One of the most important investigative tools is the Signed or Recorded Statement.  The Field Claims Rep may be called upon to take a statement from an individual who is unable or unwilling to give a statement over the phone.  Often, a Rep may be asked to meet a witness at an attorney's office so the attorney can be present for the interview."  (Ex. F, p. M0002748.)  This required Plaintiff to question witnesses, identify the critical issues, uncover facts and evaluate information.  (Ex. F, p. M0002748.)

8

### 3.     Trial, Deposition And Hearing Attendance

Plaintiff testified that he represented Safeco during legal proceedings. According to Safeco's training manual, "In many instances, we are required or feel it would be beneficial to attend the proceedings. Field Reps are often called upon to fill this role." (Ex. F, p. M0002748.) When asked to attend a hearing or deposition, Plaintiff was expected to provide "an objective, unbiased opinion of testimony" to assist Safeco in evaluating the claim. (Ex. F, p. M0002748-M0002749.) Plaintiff was expected to "prepare a summary report for the inside adjuster, outlining the nature of the proceedings, who was in attendance, any key or critical testimony, and [his] impression of the persons testifying." (Ex. F, p. M0002749.)

### 4.     Face-to-Face Negotiations

In the course of inspecting and estimating damage to an automobile, Plaintiff was expected to reach an agreed cost of repair ("ACOR") with the repair shop selected to repair the damage to the automobile. (Ex. F, p. M 0002747.) In addition to these negotiations, Plaintiff also negotiated settlements with claimants, customers and attorneys. As set forth in Safeco's training manual, "The majority of all claims are handled over the telephone. . . . Occasionally, you may be called upon to meet with a customer personally to discuss the handling or settlement of a claim. Other times, you may be asked to meet with an attorney for the same purpose." (Ex. F, p. M 0002749.)

### D.     Paul Barry's Testimony Confirms That Plaintiff Adjusted Insurance Claims

In his capacity of Director of Automation and Training, Paul Barry prepared Safeco's training manual entitled "ORG 401." (Barry Dep., pp. 16, 27-28.)[6] Mr. Barry's

---

[6]   A copy of the pertinent portions of the transcript of Mr. Barry's deposition testimony is attached to the Strange Affidavit as Exhibit 3.

9

testimony confirms that Plaintiff performed the duties of insurance claims adjuster.  For example, Mr. Barry testified that Claims Representatives who performed damage assessment duties also conducted scene investigations and attended depositions:

> [T]here isn't really – to my knowledge there was never an actual job title of PD rep.  It was more a phrase of convenience to distinguish somebody who had skills in writing an auto versus a property rep or somebody. When you say "a PD rep," well a PD rep may also need to attend depositions or may need to . . . solve kinds of investigations, scene[] investigations.  It's not that the PD rep quote, unquote was an exclusive position that did or didn't do certain functions.  It was more of a function that a claims rep would perform.

(Barry Dep., p. 42.)[7]

Mr. Barry also testified that Claims Representatives who performed damage assessment duties did more than merely estimate and appraise automobile damages.  As he stated, "There are other insurance carriers, I believe, that have people who simply write estimates.  But our Field Reps were expected to do more in the adjustment and handling of the claim."  (Barry Dep., p. 68.)  In contrast, Safeco's Claims Representatives who performed damage assessment duties exercised discretion and independent judgment by adjusting insurance claims.

In performing scene investigations, Claims Representatives were responsible for determining the focus and course of the investigation into the claimed loss.  This required Claims Representatives to canvass for witnesses, determine what leads to pursue and how large an area to investigate.  (Barry Dep., pp. 70-72, 82-83.)  Claims Representatives also obtained recorded statements from witnesses in which they determined the "critical issues" involved in the

---

[7]  Mr. Barry further explained, "PD Rep" was not an "official title" – it was "more a matter of convenience when referring to the functions a person might perform . . . [it was] a descriptive term[] to describe what kind of functions a person might perform."  (Barry Dep., p. 52.)

accident, attempted to ascertain the facts of a particular loss and decided what line of questioning to pursue. (Barry Dep., pp. 72-73, 83.) Claim Representatives also participated in litigation, determined the critical issues in a case, interpreted the effectiveness of witnesses, and prepared reports assessing the situation. (Barry Dep., pp. 73, 84-85.) Mr. Barry confirmed that Claims Representatives who performed damage assessment duties also had "complete discretion" in conducting negotiations. (Barry Dep., pp. 85-86.) This included "choosing what they are going to say and . . . directing the outcome of the settlement." (Barry Dep., p. 86; emphasis added.) In the event an insured's vehicle was a total loss, Mr. Barry testified that the Claims Representative might have to negotiate a settlement with the bank and the vehicle owner. (Barry Dep., pp. 76-77.)

E.    David Kabara's Testimony Confirms That Plaintiff Adjusted Insurance Claims

Plaintiff's former supervisor, David Kabara, confirmed that Plaintiff did more than merely inspect and appraise automobile damage.[8] Mr. Kabara was responsible for supervising Plaintiff and other Claims Representatives in the field. (Kabara Aff., ¶ 2.) Plaintiff, like the other Claims Representatives who reported to Mr. Kabara, settled and negotiated claims within his settlement authority. Plaintiff also settled claims outside his authority with Mr. Kabara's approval. (Kabara Aff., ¶ 4.) In giving his approval, Mr. Kabara relied entirely on Plaintiff's judgment and experience and on his recommendation on how to resolve the claim and how much to pay to settle the claim. (Kabara Aff., ¶ 4.) Mr. Kabara expected Plaintiff and other Claims Representatives "to use their independent judgment and discretion to negotiate settlements. Just about all of the settlements required negotiations." (Kabara Aff., ¶ 7.)

---

[8]   A copy of the Affidavit of David Kabara is attached to the Strange Affidavit as Exhibit 4. The original Affidavit of David Karbara was submitted to the Court in support of Safeco's Memorandum of Law in Opposition to Plaintiff's Renewed Motion to Proceed as Collective Action dated June 16, 2003.

Negotiation skills were "necessary to effectively perform the Claims Representative job in the field." (Kabara Aff., ¶ 6.)

Mr. Kabara believed that Plaintiff did more than merely appraise automobile damage claims. As he testified,

> The Claims Representatives who I supervised at Safeco adjusted the claims they handled. There were not merely auto appraisers. I have worked in the insurance business for 24 years and understand the difference between adjusters and appraisers. An appraiser is generally someone who assesses the damage on the car only. The Claims Representatives I supervised did more than assess the damage on the car. They adjusted the claim with the insured and the body shop.

(Kabara Aff., ¶ 14.) From April 2001 to December 2001, Plaintiff was designated as "Territory Manager." In this position, Mr. Kabara was able to evaluate Plaintiff's management skills and objectives. (Kabara Aff., ¶ 13.)

F.    Scott Ables' Testimony Confirms That Plaintiff Adjusted Insurance Claims

Scott Ables, Safeco's Vice President of Claims, also confirmed that Plaintiff and other Claims Representatives performed duties in addition to merely inspecting and estimating physical damage to automobiles.[9] Mr. Ables testified that while some Claims Representatives performed some automobile damage assessment duties depending on their experience, skill level, geographic region and other factors, those employees also performed a variety of additional non-exempt, administrative duties which required them to investigate, evaluate and adjust insurance claims.

For example, Mr. Ables testified that some Claims Representatives had "skills to do damage assessment." (Ables Dep., p. 27.) This was a "broad description . . . a claims

---

[9]  A copy of the pertinent portions of the transcript of Mr. Ables' deposition testimony is attached to the Strange Affidavit as Exhibit 5

representative might do damage assessment on automobiles, they may pay the losses, they determine coverage. They may do scene investigation to help determine liability. They work to detect fraud and have input on that." (Ables Dep., pp. 27-28.) Mr. Ables also confirmed that while some Claims Representatives performed some damage assessment duties, these individuals "also have responsibility for fraud detection, for coverage determination, for settlement of the loss." (Ables Dep., p. 74.) As noted by Wayne Brown, Safeco's former Senior Vice President of Claims, while Safeco's Claims Representatives in the field performed some automobile damage assessment duties, "their job was broader then just writing estimates on vehicles." (Brown Dep., p. 49.)[10]

G.    Bill Lebo's Testimony Confirms That Plaintiff Adjusted Insurance Claims

The deposition testimony of Bill Lebo also establishes that Plaintiff performed duties far broader than merely inspecting and estimating automobile damage. Mr. Lebo worked for Safeco from 1969 until June 2002.[11] (Lebo Dep., p. 7.) At the time of his retirement, Mr. Lebo was an Executive Vice President who oversaw Safeco's regional offices as well as the claims, marketing, administrative and human resources departments. (Lebo Dep., p. 24.)

Mr. Lebo testified that Safeco did not employ anyone "with the title auto appraiser." (Lebo Dep., p. 64.)[12] Mr. Lebo confirmed that Claims Representatives who performed damage assessment duties also "investigated claims [and] . . . settled bodily injury claims." (Lebo Dep., p. 41.) Their job duties "involved negotiating and reaching agreement

---

[10]    A copy of the pertinent portions of the transcript of Mr. Brown's deposition testimony is attached to the Strange Affidavit as Exhibit 6.

[11]    A copy of the pertinent portions of the transcript of Mr. Lebo's deposition testimony is attached to the Strange Affidavit as Exhibit 7.

[12]    Mr. Lebo further testified, "Safeco didn't have automobile appraisers . . ." (Lebo Dep., pp. 68-69.)

with body shop owners, repair personnel . . . [and] <u>negotiating and reaching agreement with customers or claimants against our customers</u>." (Lebo Dep., pp. 41-42; emphasis added.) Mr. Lebo believed that these Claims Representatives "adjust[ed] physical damage and property losses" which included "negotiat[ing] and settl[ing] the claim with our customer or the claimant themselves. . . . [C]laims representatives were involved in the investigation, preparation of damages and settlement of claims." (Lebo Dep. pp. 46-47.)

      H.      <u>The Decision To Re-Classify Claims Representatives In July 2001</u>

          Effective July 16, 2001, Safeco re-classified Claims Representatives, Senior Claims Representatives and Claims Specialists as non-exempt employees. This decision was made, in substantial part, in response to the decision issued in <u>Bell v. Farmers Ins. Exchange</u>, 87 Cal. App. 4th 805, 105 Cal. Rptr. 2d 59 (Cal. Ct. App. 2001). Even though Safeco's Claims Representatives, Senior Claims Representatives and Claims Specialists regularly performed duties which involved the exercise of discretion and independent judgment such as investigating and evaluating claims, representing the company, advising management and negotiating settlements, the decision in <u>Bell</u> raised questions about whether Safeco should continue to classify employees in claims representative positions as exempt. (Safeco's Supplemental Response to Plaintiff's First Set of Interrogatories, Interrogatory No. 3.)[13] Mr. Lebo, who was involved in the reclassification decision, testified,

> My recollection is that Farmers Insurance Company lost a lawsuit in California on that issue. And the claims and HR people came to me and said, we can wait and see if Farmers' appeal is successful and not reclassify our employees, or we can choose to reclassify our employees now, and if Farmers isn't successful with their appeal, it limits the

---

[13]  A copy of Safeco's Supplemental Response to Plaintiff's First Set of Interrogatories is attached to Plaintiff's Motion for Summary Judgment as Exhibit L.

> exposure we might have by not reclassifying our employees because the
> law – the Farmers decision, to my understanding, changed the law in the
> state of California as to how these people were classified.
>
> I made the decision that we would reclassify our employees. And I also
> made the decision we would reclassify them on a national basis, so that we
> treated all classes of employees the same and eliminated the exposure to
> any future causes of action that we did something wrong by not
> reclassifying after the Farmers decision.

(Lebo Dep., p. 65.) Mr. Lebo further stated,

> We made a decision that if this case stands as law on a go forward basis,
> we owe overtime. So we chose to start paying it then on a go-forward
> basis because if the law stood and withstood the challenge, that was the
> best decision to make for the company. It was fair to the employees, and
> it kept the company from being in the position of finding out two or three
> years down the road when all the appeals were over, that, yeah, that was
> the decision, it stands and you owe overtime from when that decision was
> made until now.

(Lebo Dep., p. 71.) Mr. Lebo's testimony was confirmed by Jim Wilson, Vice President of

Human Resources, and Matt Philip, Director of Compensation and Benefits. (Deposition of Jim

Wilson, pp. 5, 12-14, 20; Deposition of Matt Philip, pp. 5, 14-16.)[14]

In his Motion for Summary Judgment, Plaintiff continues to grossly

mischaracterize Mr. Ables' testimony regarding Safeco's classification of Claims

Representatives prior to July 16, 2001.[15] For example, contrary to Plaintiff's claim on page 3 of

---

[14] Copies of the pertinent portions of the transcripts of Mr. Wilson's and Mr. Philip's deposition testimony are attached to the Strange Affidavit as Exhibits 8 and 9, respectively.

[15] For at least the fourth time in this litigation, Plaintiff has distorted Scott Ables' testimony and advanced the claim that Safeco employed a class of individuals who performed duties strictly limited to appraising damaged automobiles, that shortly after Judge Covello's AIAC decision in 1994, Mr. Ables became aware that Safeco improperly categorized these individuals as exempt, and that in response to AIAC, Safeco changed the appraisers' job title to "Claims Representative" in an effort to "hide" these individuals and "sweep them under the rug" of the title of Claims Representatives. (Mot., Summ. Judg., pp. 3-4.) Indeed, the entire text of page 4 of Plaintiff's Motion for Summary Judgment is not a recitation of undisputed facts – it is argument of facts which are not supported by the testimony of Mr. Ables or any other witness. Plaintiff's account of these events is without a scintilla of supporting evidence and should be rejected by this Court yet again.

his Motion for Summary Judgment that Mr. Ables became aware of Judge Covello's ruling in AIAC shortly after the decision was issued, Mr. Ables testified <u>three separate times</u> that he did <u>not</u> review a specific case regarding the non-exempt status of automobile appraisers. Mr. Ables testified, "I was not aware of the specific case, but I was aware that there had been some rulings for appraisers previously. I did not know the year or the case number or anything like that. . . I did not see a case. I did not review a case . . . ." (Ables Dep., pp. 69-70.)[16]

Mr. Ables' testimony is quite clear. Sometime after 1990, Mr. Ables learned of some court decisions holding that automobile appraisers were non-exempt under the FLSA. (Ables. Dep., pp. 69-70.) Mr. Ables did not believe these decisions applied to Safeco's Claim Representatives who performed automobile damage assessment duties because these individuals "did more than appraiser work. . . . [W]e believed that our staff were not just appraisers, they did other things than just appraisals. They also paid claims, exercised various judgments, et cetera." (Ables Dep., p. 70.) Mr. Ables further testified that while Safeco had hired "very few" automobile appraisers from other companies, these individuals were integrated into the Claims Representative position and their roles were expanded to include additional duties beyond merely inspecting and appraising physical damage to automobiles. (Ables Dep., pp. 71-73.) Mr. Ables did not believe that these individuals were non-exempt because they did not "fit the appraiser title." (Ables Dep., p. 73.) Mr. Ables explained,

> And when I say "appraiser," in the industry generally appraisers don't pay
> damages. They write an estimate and send it to the company or send it in

---

[16] Plaintiff further mischaracterizes the alleged time frame that Mr Ables supposedly became aware of <u>AIAC</u>. Mr Ables never testified that he become aware of <u>AIAC</u> "shortly" after Judge Covello issued his ruling. (Mot. Summ Judg , p. 3.) Mr Ables actually testified that he became aware of court decisions holding that automobile appraisers were non-exempt sometime after 1990, but before January 2001. When pressed, Mr. Ables stated, "I don't want to guess, but I would say sometime after I came in in 1990. I don't know, it could be in the mid-years, '94, '95, '96. I don't know." (Ables Dep., p. 70.)

> to an inside person. But they don't pay damages and they don't become involved in casualty investigations and fraud investigations and things like that. And our appraisal staff did other things than just write estimates. So we didn't believe they were in that category.

(Ables Dep., p. 73.)  Mr. Lebo confirmed Mr. Ables' testimony that Safeco did not employ automobile appraisers as described in <u>AIAC</u>, "Safeco didn't have automobile appraisers, so, no, I wasn't aware of any regulations applying to automobile appraisers." (Lebo Dep., pp. 68-69.)

II.     ANALYSIS

    A.     <u>Summary Judgment Standard</u>

        Summary judgment may only be granted if the moving party can "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)  In considering such a motion, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." <u>L.B. Foster Co. v. American Piles, Inc.</u>, 138 F.3d 81, 87 (2d Cir. 1998 )(citations omitted).  In determining whether to grant summary judgment, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." <u>American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.</u>, 388 F.2d 272, 279 (2d Cir. 1967).  Summary judgment should only be granted if no rational factfinder could rule in favor of the non-moving party.  <u>Heilweil v. Mount Sinai Hosp.</u>, 32 F.3d 718, 721 (2d Cir. 1994).

        "Whether an employee qualifies for the administrative exemption is a mixed question of fact and law.  The question of how the employees spent their working time . . . is a question of fact. . . .  The question of whether their particular activities excluded them from the overtime benefits of the Fair Labor Standards Act is a question of law." <u>AIAC</u>, 902 F. Supp. at

325 (internal quotation omitted; citations omitted).  See Cooke v. General Dynamics Corp., 993

F. Supp. 56, 64 (D. Conn. 1997) (while the "ultimate question of whether an employee is

excluded from the overtime requirements of the FLSA is a question of law[,]" conflicting

evidence regarding the job duties of subject employees creates an issue of fact precluding

summary judgment).  See also Nelson v. Ellerbe Beckert Const. Services, 283 F. Supp. 2d 1068,

1080 (D. Minn. 2003) (denying summary judgment based on conflicting testimony regarding the

employee's job duties and his use of discretion and independent judgment).   Thus, while the

Court will ultimately decide as a matter of law whether Plaintiff met the requirements of the

administrative exemption, questions of fact concerning the nature and substance of Plaintiff's job

duties are sufficient to preclude summary judgment.

      B.     Application of the Administrative Exemption

      Under the FLSA and CMWA, an employee is entitled to overtime pay at a rate

not less than one and one half times the employee's regular rate of pay if the employee works

more than forty hours per week.  See 29 U.S.C. § 207(a)(1); Conn. Gen. Stat. § 31-76c.  An

employee is exempt from the overtime requirements of federal and state law if the employee is

employed in a bona fide executive, administrative or professional capacity.  See 29 U.S.C. §

213(a)(1); Conn. Gen. Stat. § 31-58(f).  To determine whether an employee is employed in a

bona fide administrative capacity, federal regulations provide both a "long test" and a "short

test."  Because it is undisputed that Plaintiff was compensated at a rate of not less than $250 per

week, the "short test" applies to the determination whether Plaintiff was employed in a bona fide

administrative capacity.  See 29 C.F.R. § 541.214; AIAC, 902 F. Supp. at 323.

      To fall within the administrative exemption, Plaintiff's job duties must satisfy the

three part short test set forth in the FLSA's governing regulations.  Under the short test, Safeco

18

must establish: 1) that Plaintiff was paid on a salary basis; 2) that Plaintiff's primary job duties consisted of the performance of non-manual work directly related to management policies or general business operations of the company; and 3) that Plaintiff's work required the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(e)(2); 29 C.F.R. § 541.214(a).

In his Motion for Summary Judgment, Plaintiff concedes that he satisfied the first prong of the short test because he received a salary greater than $250 per week. However, Plaintiff claims that he did not meet the second and third requirements of the short test on the grounds that his primary job duties were not directly related to the management policies or general business operations of Safeco and because he did not exercise sufficient discretion and independent judgment in performing his alleged job duties. (Mot. Summ. Judg., p. 18.)

As set forth in more detail below, summary judgment is inappropriate because 1) the overwhelming weight of the case law, including the principal cases on which Plaintiff relies in his Motion for Summary Judgment, establish that Plaintiff's job duties were directly related to the management policies or general business operations of Safeco; and 2) there are material issues of fact regarding the nature and substance of Plaintiff's job duties and the degree of discretion and independent judgment he exercised in performing those duties which preclude the Court from entering judgment as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

1.    Plaintiff Engaged In Work Directly Related To Safeco's Management Policies Or General Business Operations

Under the second prong of the short test, an employee's job activities are "directly related to management policies or general business operations of the company" if they "relat[e] to the administrative operations of a business as distinguished from 'production' or, in a retail or

service establishment, 'sales' work." 29 C.F.R. § 541.205(a). To satisfy the second prong of the short test, the employee must also "perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." Id. Administrative responsibilities include "servicing a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). The regulations specifically state that employees' job duties are directly related to management policies or general business operations if the employees work as "claim agents and adjusters." 29 C.F.R. § 541.205(c)(5).

a.  Plaintiff Did Not Perform Production Work Because Safeco Is Not<br>In The Business Of Producing Settled Claims

In his Motion for Summary Judgment, Plaintiff claims that he performed "production" work unrelated to the management policies or general business operations of Safeco. In support of his claim, Plaintiff relies primarily on Judge Covello's decision in AIAC. (Mot. Summ. Judg., p. 18.) In AIAC, Judge Covello held that the plaintiffs, who were employed as automobile damage appraisers, did not satisfy the second prong of the short test because they were involved in production rather than administrative work. AIAC, 902 F. Supp. at 325.[17]

Judge Covello's conclusion that the automobile damage appraisers employed by AIAC did not satisfy the second prong of the short test is distinguishable both factually and legally from the present matter. First, and most importantly, AIAC, unlike Safeco, was not in the business of selling insurance policies. As Judge Covello noted, "AIAC is in the business of

---

[17] In so holding, Judge Covello concluded that the plaintiffs' primary duties were "not directly related to AIAC's general business operations. Appraisers gather facts and determine the cost of repair to damaged automobiles. Rather than administratively running the business, they carry out the daily affairs of AIAC . . . . The appraisers do not administer the business of AIAC." AIAC, 902 F. Supp at 325.

resolving damage claims." AIAC, 902 F. Supp. at 325 (emphasis added). Judge Covello found, in essence, that AIAC produced settled claims. Thus, the facts of AIAC are distinguishable from those in the present matter because Safeco is in the business of producing and selling insurance policies – not settled claims.

At least one district court has rejected Plaintiff's claim that Safeco, like AIAC, is in the business of producing settled claims. In Jastremski v. Safeco Ins. Co., 243 F. Supp. 2d 743 (N.D.Ohio 2003), the court found that the plaintiff, who was employed with Safeco as a senior claims representative, was exempt under the administrative exemption. With respect to the second prong of the short test, the plaintiff urged the court to find that Safeco "existed to produce settled claims" and that, therefore, as a claims representative, he was a non-exempt production worker. Jastremski, 243 F. Supp. 2d at 753. In support of his claim, the plaintiff relied on Bell v. Farmers Ins. Exchange, 87 Cal. App. 4th 805, 105 Cal. Rptr. 2d 59 (Cal Ct. App. 2001).[18]

The court rejected the plaintiff's claim finding that the "plaintiff's department was one of several departments in one large insurance company. The vast majority of defendant's insurance policies did not result in claims in any given year." Jastremski, 243 F. Supp. 2d at 753. The court went on to conclude that the plaintiff was an administrative employee, in part, because Safeco's products were its insurance policies, not settled claims. Id. The court's conclusion was in accord with several other courts which have determined that insurance companies like Safeco produce insurance policies, not settled claims. See Reich v. John Alden

---

[18] In Bell, as in AIAC, the defendant's products were settled claims. In distinguishing Bell, the Jastremski court explained, "The facts of Bell, however, were quite different because claims adjusting was 'the sole mission' of the defendant company . . . The defendant in Bell, therefore, produced nothing but settled claims; its adjusters were production workers." Jastremski, 243 F. Supp. 2d at 753 (citing Bell, 105 Cal. Rptr. 2d at 74).

Life Co., 126 F.3d 1, 9 (1st Cir. 1997) ("John Alden does indeed generate a product, insurance policies."); McLaughlin v. Nationwide Mutual Ins. Co., No. 02-6205-TC, 2004 U.S. Dist. LEXIS 21841, *15 (D.Or. 2004)("Defendants are in the business of designing and creating insurance policies and selling them to customers. . . . Defendants receive claims and do claim processing on a fraction of their policies and such is a cost of doing business and not a product.") (Strange Aff., Ex. 10); Palacio v. Progressive Ins. Co., 244 F. Supp. 2d 1040, 1047 (C.D.Cal. 2002) ("Progressive is not in the business of claims handling. Rather, it is in the business of writing and selling [] insurance."); Wilshin v. Allstate Ins. Co., 212 F. Supp. 2d 1360, 1376 (N.D.Ga. 2002)(insurance company's products are the policies themselves); Hogan v. Allstate Ins. Co., 210 F. Supp. 2d 1312, 1320-21 (M.D. Fla 2002) (same).

As the court in Jastremski rejected the plaintiff's reliance on Bell, this Court should reject Plaintiff's reliance on AIAC. Safeco, unlike the defendants in AIAC and Bell, was not in the business of producing settled claims, it was in the business of producing and selling insurance policies. Thus, the Plaintiff's reliance on AIAC is misplaced. Plaintiff was not a production worker – he administered the business affairs of Safeco – and therefore satisfies the second prong of the short test.

    b.  The Cases On Which Plaintiff Relies In His Motion For Summary Judgment Contradict His Claim That He Performed Production Work

Plaintiff's claim that he performed production work should also be rejected because cases which have considered this issue, including two cases on which Plaintiff relies in his Motion for Summary Judgment, Farmers Insurance, 336 F. Supp. 2d 1077 and Robinson-Smith, 323 F. Supp. 2d 12, have concluded that automobile damage appraisers satisfy the second prong of the short test because they perform administrative rather than production work. (Mot.

22

Summ. Judg., pp. 23-26.)  Thus, even accepting Plaintiff's claim that he performed the same narrow range of automobile damage appraiser duties described in Farmers Insurance and Robinson-Smith, which Safeco disputes and which is contradicted by the Mike Declaration, Plaintiff's own cases undermine his claim that his duties were not directly related to the management policies or general business operations of Safeco.

In Farmers Insurance, the court considered whether several different categories of the defendant's Claims Representatives were exempt under the FLSA and state law.  One of the categories, and the category on which Plaintiff relies in his Motion for Summary Judgment, was identified as Auto Physical Damage Claims Representatives ("APD CRs").  Farmers Insurance, 336 F. Supp. 2d at 1097.  The court described their job duties as follows:

> As a general proposition, the basic job of an ADP CR is estimating the claim, which involves looking at the vehicle, photographing, using personal observation or software to determine if the vehicle is a total loss or if not, the cost to repair or replace with new or used parts, using experience to determine the number of hours for repair, and paying the claim.

Farmers Insurance, 336 F. Supp. 2d at 1097.  Plaintiff argues in his Motion for Summary Judgment that he performed the same automobile damage appraisal duties described in Farmers Insurance.  (Mot. Summ Judg., pp. 15-16, 25-27.)

In Farmers Insurance, the court concluded that APD CRs met both the first and second prongs of the short test.  First, the court found that APD CRs met the salary test because they were paid a weekly salary greater than $250.  Farmers Insurance, 336 F. Supp. 2d at 1102.  Second, the court found that the primary duties of APD CRs "consisted of work that is directly related to [defendant's] management policies and business operations [and that] the work of all

CRs is of substantial importance to [defendant's] business operations and management policies."

Farmers Insurance, 336 F. Supp. 2d at 1102-03.[19]

While the court in Farmers Insurance ultimately found that APD CRs did not satisfy the third prong of the short test requiring the exercise of discretion and independent judgment, the court's ruling contradicts Plaintiff's claim on pages 18 to 21 of his Motion for Summary Judgment that his alleged job duties fail the second prong of the short test. If this Court follows the reasoning of Farmers Insurance, as Plaintiff urges, it should conclude that Plaintiff's description of his automobile damage appraiser duties satisfies the second prong of the short test.

The same result was also reached in Robinson-Smith. In that case, the court considered whether Auto Damage Adjusters were exempt under the FLSA. Robinson-Smith, 323 F. Supp. 2d at 14. The court described their job duties as follows: "Auto damage adjusters assess, negotiate and settle automobile damage claims made to GEICO. . . . The majority of adjusters' time is spent inspecting vehicles, writing estimates, and traveling to and from inspection sites." Robinson-Smith, 323 F. Supp. 2d at 15. In his Motion for Summary Judgment, Plaintiff quotes extensively from Robinson-Smith and argues that he performed the same auto damage appraisal duties described therein. (Mot. Summ Judg., pp. 15-16; 23-25.)

In Robinson-Smith, the court concluded that the plaintiffs satisfied both the both the first and second prongs of the short test. First, the court found that the auto damage adjusters met the salary test because they were paid a weekly salary greater than $250. Robinson-Smith,

---

[19] The court also noted that, unlike the defendant in AIAC, the defendant in Farmers Insurance "perform[ed] all the functions of an insurance company, including selling insurance policies . . . and adjusting, settling, and otherwise resolving claims made on its policies. Thus, although [the defendant's] CRs adjust claims, [the defendant] is not a claims adjusting company and its business is not restricted to selling claims adjusting services." Farmers Insurance, 336 F. Supp. 2d at 1092. Safeco, like the defendant in Farmers Insurance, is an insurance company rather than a claims adjusting company like AIAC.

323 F. Supp. 2d at 18, 22. Second, the court found that the primary duties of the auto damage adjusters were "directly related to management policies or general business operations" of GEICO. Robinson-Smith, 323 F. Supp. 2d at 22. The court stated,

> The auto damage adjusters are not sales staff. They are engaged in servicing the insurance policies of GEICO customers and in carrying out the polices formulated by GEICO with respect to auto damage claims. The Court concludes that the duties of auto damage adjusters are directly related to GEICO's management policies and business operations in that they are responsible to execute or carry out GEICO's claims adjusting policies on behalf of GEICO and the policy holders.

Robinson-Smith, 323 F. Supp. 2d at 23 (citations omitted; internal quotations omitted).[20]

The court in Robinson-Smith further concluded that the auto damage adjusters also performed work of substantial importance to the management or operation of GEICO's business. The court stated,

> [M]ost courts have agreed that insurance adjusters, including auto physical damage adjusters, do work that is "of substantial importance to [the employer's] business operations and management policies." In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation, 300 F. Supp. 2d at 1048; see also Palacio v. Progressive Insurance Co., 244 F. Supp. 2d at 1048 (agent's primary duties were directly related to management policies or general business operations); Jastremski v. Safeco Insurance Co., 243 F. Supp. 2d at 751 (plaintiff's duties were administrative where he advised management of his findings, planned how to handle claims and negotiated binding settlements). Other courts have held that auto damage appraisers perform the "day-to-day activities of the business" and therefore do not "administer the business" of the defendant. Reich v. American Int'l Adjustment Co., 902 F. Supp. at 325. In Reich, however, the defendant was "in the business of resolving damage claims." See id. at 325. GEICO is in the business of selling auto insurance.

---

[20]    The court further noted, "GEICO is in the business of producing insurance policies, not damage estimates. GEICO underwrites and sells automobile insurance directly to consumers and GEICO receives claims on less than ten percent of its policies. Estimates therefore are not the 'product' of GEICO." Robinson-Smith, 323 F Supp. 2d at 23 n.6.

Robinson-Smith, 323 F. Supp. 2d at 23. The court went on to state, "the work done by auto damage adjusters is of substantial importance to GEICO's business operations and therefore satisfies the second requirement for the [administrative] exemption under the FLSA. . . . Defendant thus has satisfied its burden of demonstrating that plaintiff's salary qualifies him for exemption and that plaintiff's primary duty is of substantial importance to GEICO's business operations, fulfilling the first two requirements of the administrative exemption." Id.

As with Farmers Insurance, the court in Robinson-Smith ultimately concluded that the auto damage adjusters employed by GEICO did not exercise sufficient discretion and independent judgment to satisfy the third prong of the short test. Robinson-Smith, 323 F. Supp. 2d at 24. However, Robinson-Smith does not support, and, in fact, contradicts, Plaintiff's claim that the job duties he asserts he performed do not satisfy the second prong of the short test.[21]

Based on the foregoing, this Court should reject Plaintiff's misplaced reliance on AIAC. As Judge Covello noted, and as pointed out in Robinson-Smith, AIAC was in the business of resolving automobile damage claims. Safeco, like the defendants in Farmers Insurance, Robinson-Smith, and McLaughlin, was in the business of producing and selling insurance polices. Thus, the Court should conclude that Plaintiff's job duties satisfied the second prong of the short test.

---

[21]  Another court which considered this same issue, but which Plaintiff did not cite in his Motion for Summary Judgment, reached the same result as Farmers Insurance and Robinson-Smith. In McLaughlin v. Nationwide Mutual Ins. Co., 2004 U.S. Dist. LEXIS 21841, the court considered the exempt status of the defendant's Material Damage Claim Representatives ("MDCRs"). The MDCRs were responsible for "adjust[ing] insurance claims involving damage to automobiles" including appraising damage to vehicles, determining whether to repair or replace automobile parts, settling claims and performing other similar duties. McLaughlin, 2004 U.S. Dist. LEXIS at *30-*32. The court concluded that these individuals satisfied the second prong of the short test because they were responsible for carrying out the defendant's "claim adjusting policies" and because they performed work of "substantial importance to the defendant's business operations and management policies." McLaughlin, 2004 U.S. Dist. LEXIS at *32-*33.

2.    There Are Questions Of Fact Regarding The Degree of Discretion And
Independent Judgment Plaintiff Exercised In Performing His Job Duties
Which Preclude Summary Judgment

The third prong of the short test requires evidence that the employee exercised "discretion and independent judgment." 29 C.F.R. § 541.2(e)(2); 29 C.F.R. § 541.207. The exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R.s § 541.207(a). Further, it means "that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Id.

However, the requirement that an employee exercise discretion and independent judgment

> does not necessarily imply that the decisions made by the employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. § 541.207(e)(1). Plaintiff's claim that he did not excise sufficient discretion and independent judgment to satisfy the third prong of the short test is based almost entirely on his assertion that he performed job duties identical to those performed by the automobile damage appraisers described in AIAC, Farmers Insurance and Robinson-Smith. (Mot. Summ. Judg., pp. 22-26.) Plaintiff is not entitled to summary judgment, however, because there are questions of fact regarding the nature of Plaintiff's job duties which, when viewed in the light most favorable

27

to Safeco, establish that Plaintiff performed the duties of an exempt insurance claims adjuster rather than the duties of a non-exempt automobile damage appraiser.

Plaintiff argues at length in his Motion for Summary Judgment that he performed the same narrow range of automobile damage appraisal duties described in AIAC, Farmers Insurance, and Robinson-Smith. (Mot. Summ. Judg., pp. 21-27.) Plaintiff claims that, consistent with these cases and the Department of Labor's Field Operations Handbook, this Court should conclude, as a matter of law, that he did not exercise sufficient discretion and independent judgment to satisfy the third prong of the short test. Plaintiff is not entitled to summary judgment, however, because he performed duties different from, and far broader than, those described in the Department of Labor's Field Operations Handbook and the above cases.

As set forth in more detail above, in addition to inspecting and estimating physical damage to automobiles, Plaintiff testified that he conducted scene investigations, interviewed witnesses, obtained recorded statements, participated in the litigation process on behalf of Safeco and settled claims with claimants, customers and attorneys. These additional job duties distinguish Plaintiff from the line of automobile damage appraiser cases on which he relies. Consequently, the facts of this case, when viewed in the light most favorable to Safeco, establish that Plaintiff performed the job duties of an exempt insurance claims adjuster rather than the job duties of a non-exempt automobile damage appraiser.

      a.    Plaintiff's Job Duties Were Far Broader Than Those Described in AIAC

In AIAC, the court described the plaintiffs' job duties as follows:

> After the defendants assign them the name and address of a policyholder with a damaged vehicle, the appraiser makes an appointment to travel to where the vehicle is located, inspect the vehicle, determine what parts must be replaced or repaired, estimate the cost of repair using company

> manuals and negotiate, if necessary, with a local body shop to arrive at an
> agreed upon price to perform the work.

AIAC, 902 F. Supp. at 322.

In entering summary judgment for the plaintiffs, Judge Covello disregarded the defendant's reliance on case law regarding the non-exempt status of insurance adjusters stating, "the court concludes that these references have limited value because of the difference in the nature of the two jobs, i.e., adjusters and appraisers." AIAC, 902 F. Supp. at 323 n3. The court further noted, "While the adjusters negotiate and settle claims with the insured and deal with issues of coverage or liability, the appraisers are the fact finders." AIAC, 902 F. Supp. at 324. Based on the plaintiffs' limited range of job duties in determining the cost of repairing damaged automobiles, the court concluded that the plaintiffs failed to exercise sufficient discretion and independent judgment to satisfy the third prong of the short test. AIAC, 902 F. Supp. at 324.[22]

Plaintiff's job duties are factually distinguishable from those described in AIAC and the Department of Labor's Field Operations Handbook. In AIAC, the plaintiffs' duties were limited to those described in the Field Operations Handbook – inspecting physical damage to automobiles, estimating the cost of repairing that damage, and reaching an agreed cost of repair with a repair shop. The plaintiffs in AIAC did not investigate and evaluate claims like Plaintiff did; they did not conduct scene investigations; they did not canvass for witnesses; they did not interview witnesses or obtain recorded statements; they did not participate in the litigation process on behalf of the defendant; and they did not settle claims with customers, claimants or

---

[22] In reaching his conclusion, Judge Covello also relied on the DOL's Field Operation Handbook, which provided, in pertinent part, "Appraisers whose functions are to inspect damaged motor vehicles in order to estimate the cost of the necessary repairs, and who also reached an 'agreed' price with the repair shop on the cost of repairs, do not customarily and regularly exercise discretion and independent judgment as required by Reg 541.2." AIAC, 902 F Supp. at 323-24 (citing Department of Labor's Field Operation Handbook)

attorneys. Plaintiff's duties required him, among other things, to investigate losses, determine the causal factors of an accident, question witnesses, identify issues for litigation, uncover facts, evaluate information, determine credibility, advise management, and negotiate settlements.

In performing these duties, in addition to the narrow range of automobile damage appraisal duties described in <u>AIAC</u>, Plaintiff clearly exercised far more discretion and independent judgment than the automobile damage appraisers in <u>AIAC</u>. Thus, <u>AIAC</u> is factually and legally distinguishable from the present matter and does not support Plaintiff's claim that he fails the third prong of the short test as a matter of law.

    b. <u>Plaintiff's Job Duties Were Far Broader Than Those Described in Farmers Insurance</u>

In <u>Farmers Insurance</u>, the court described the plaintiffs' job duties as follows:

> An APD CR handles auto physical damage claims. . . . [T]he basic job of an ADP CR is estimating the claim, which involves looking at the vehicle, photographing it, using personal observation or software to determine if the vehicle is a total loss or if not, the cost to repair or replace with new or used parts, using experience to determine the number of hours for repair and paying the claim. . . . An APD CR must . . . have good communication skills, because he or she must deal with, among others, insured, rental car companies, claimants, body shops and tow companies.

<u>Farmers Insurance</u>, 336 F. Supp. 2d at 1097. Upon assignment of a claim, the plaintiffs were required to contact the policyholder, locate, inspect and photograph the vehicle and verify the damage. The plaintiffs were also responsible for locating signs of fraud and for recognizing pre-existing damage to a vehicle. <u>Id.</u> The also determined whether to repair or replace damaged parts, whether to offer an appearance allowance, and whether to use factory or aftermarket parts. <u>Farmers Insurance</u>, 336 F. Supp. 2d at 1097-98.

The court concluded that while the plaintiffs satisfied the first and second prongs of the short test, they did not exercise sufficient discretion and independent judgment to satisfy

the third prong.   As the court noted, "[I]n most cases, a vehicle's VIN number tells the [plaintiffs] almost everything there is to know about the vehicle involved.  Vehicle damage is finite and limited to the value of a known entity from standard sources." Farmers Insurance, 336 F. Supp. 2d at 1103.

Plaintiff's job duties are factually distinguishable from those described in Farmers Insurance.  While the plaintiffs in Farmers Insurance performed some additional duties compared to AIAC such as recommending reserves and considering subrogation potential, Farmers Insurance, 336 F. Supp. 2d at 1097, the plaintiffs' duties were generally limited to inspecting physical damage to automobiles, estimating the cost of repairing that damage, and reaching an agreed cost of repair with a repair shop.

The plaintiffs in Farmers Insurance did not investigate and evaluate claims like Plaintiff did; they did not conduct scene investigations; they did not canvass for witnesses; they did not interview witnesses or obtain recorded statements; they did not participate in the litigation process on behalf of the defendant; and they did not settle claims with customers, claimants or attorneys.  Plaintiff's duties required him, among other things, to investigate losses, determine the causal factors of an accident, question witnesses, identify issues for litigation, uncover facts, evaluate information, determine credibility, advise management, and negotiate settlements.

In performing these additional duties which the plaintiffs in Farmers Insurance did not perform, Plaintiff required far more information than merely the vehicle's VIN number. These duties required Plaintiff to exercise far more discretion and independent judgment than the plaintiffs in Farmers Insurance.  Thus, Farmers Insurance is factually and legally distinguishable

from the present matter and does not support Plaintiff's claim that he fails the third prong of the

short test as a matter of law.

          c.      Plaintiff's Job Duties Were Far Broader Than Those Described in Robinson-Smith

In Robinson-Smith, the plaintiff were employed as "auto damage adjusters." The

court described their job duties as follows:

> Auto damage adjusters assess, negotiate and settle automobile damage claims made to GEICO. Level I adjusters, such as plaintiff, have settlement authority up to $10,000. Level II adjusters have settlement authority up to $15,000. An auto damage adjuster can recommend settlements in excess of his settlement authority. The majority of adjusters' time is spent inspecting vehicles, writing estimates, and traveling to and from inspection sites. The adjusters do not determine whether GEICO is liable for a given claim and do not have the authority to deny liability, but they do determine the value of a claim once it has been determined that the claim should be paid.

Robinson-Smith, 323 F. Supp. 2d at 15. The plaintiffs in Robinson-Smith did not interview

witnesses, they did not make recommendations regarding coverage and they did not make

recommendations regarding litigation. Robinson-Smith, 323 F. Supp. 2d at 22.

The court concluded that while the auto damage appraisers in Robinson-Smith

satisfied the first two prongs of the short test, they did not exercise sufficient discretion and

independent judgment to satisfy the third prong. Robinson-Smith, 323 F. Supp. 2d at 24. Thus,

although the plaintiffs negotiated with both body shops and claimants, unlike the plaintiffs in

AIAC which negotiated only with body shops, the court concluded that the plaintiffs failed to

satisfy all three requirements of the short test. Robinson-Smith, 323 F. Supp. 2d at 25-26.

The job duties of the auto damage appraisers described in Robinson-Smith are

similar to the narrow and tightly restricted job duties described in AIAC and Farmers Insurance.

The plaintiffs in Robinson-Smith did not investigate and evaluate claims like Plaintiff did; they

did not conduct scene investigations; they did not canvass for witnesses; they did not interview witnesses or obtain recorded statements; they did not participate in the litigation process on behalf of the defendant; and they did not make coverage decisions like Plaintiff. In performing these additional duties, Plaintiff did far more than merely inspect and estimate automobile damage and reach an agreed cost of repair with the repair shops. Plaintiff's duties required him, among other things, to investigate losses, determine the causal factors of an accident, question witnesses, identify issues for litigation, uncover facts, evaluate information, determine credibility, advise management, and negotiate settlements. Consequently, Plaintiff clearly exercised far more discretion and independent judgment than the plaintiffs in <u>Robinson-Smith</u>. The decision in <u>Robinson-Smith</u> like <u>AIAC</u> and <u>Farmers Insurance</u>, is factually and legally distinguishable from the present matter and does not support Plaintiff's claim that he fails the third prong of the short test as a matter of law.

3.    Plaintiff Performed The Duties Of An Insurance Claims Adjuster

Unlike the plaintiffs in <u>AIAC</u>, <u>Farmers Insurance</u> and <u>Robinson-Smith</u>, Plaintiff performed the job duties of an insurance claims adjuster. On November 19, 2002, the Department of Labor issued an opinion letter in which it confirmed that insurance claims adjusters are exempt under the administrative exemption.[23] The adjusters reviewed by the DOL were involved in a number of tasks:

> [T]he adjusters in question are primarily involved with the investigation and evaluation of insurance claims. . . . For example, the adjusters gather the facts by interviewing the insureds [and] witnesses; they also may visit the scene of the event, inspect property damage, and take and review photographs. The adjusters then weigh the factual information and prepare damage estimates. In doing so, they consider a variety of losses such as time lost from work, damages to personal property, the nature and

---

[23]    A copy of the Department of Labor's opinion letter is attached to the Strange Affidavit as Exhibit 11

extent of bodily injury, medical bills, and pain and suffering. They also must evaluate whether there is coverage for the claim under the policy.

(Strange Aff., Ex. 11.) In addition, the adjusters

attempt to negotiate settlements with the insureds or with the third-party claimant. The have full authority to settle claims within their established authority, and they recommend resolutions to their supervisors for more costly claims, which are generally approved. If their negotiations are unsuccessful, the adjusters advise the company on whether to settle the claim or to pursue litigation. If a claim results in litigation, the adjusters collaborate with counsel and make recommendations in preparation for litigation. In that situation, claims adjusters may be deposed and may testify at the trial. . . . [T]he adjusters remain primarily responsible for resolving a claim, even when it is in litigation and the policyholder or the third-party claimant is represented by an attorney.

(Strange Aff., Ex. 11.) The duties described in the Department of Labor's opinion letter are the same types of duties which courts have repeatedly concluded are performed by exempt insurance claims adjusters and claim agents. See Jastremski v. Safeco, 243 F. Supp. 2d at 757 (plaintiff was properly categorized as exempt where he verified coverage, planned investigation, interviewed witnesses, compiled scene diagrams, and negotiated settlements); Palacio, 244 F. Supp. 2d at 1045-46 (plaintiff was an exempt claims agent where she assessed liability, weighed evidence, determined credibility, reviewed insurance policies, negotiated with attorneys and claimants and made recommendations to management."). See also 29 C.F.R. § 541.205(c)(5)

While Plaintiff did not perform all of the duties described in the Department of Labor's opinion letter, he performed a sufficient number such that a trier of fact could find in Safeco's favor at trial. Plaintiff's duties involved servicing Safeco's business by investigating claims, advising management, planning the claims adjustment process, representing the company during the life of a claim and negotiating with body shops, claimants, customers and attorneys. See 29 C.F.R. § 541.205(b).

34

For example, Plaintiff was primarily involved with the investigation and evaluation of insurance claims, including leading or assisting in the investigation of accident scenes. (Ex. F, pp. M0002748; Pl. Dep. I, p. 122.) According to his own Declaration and the testimony of individuals employed by Safeco, Plaintiff gathered facts by interviewing insureds and witnesses, he visited accident scenes, prepared scene diagrams, determined the causal factors of an accident, canvassed for witnesses, and obtained recorded statements. (Ex. F, pp. M0002747-M0002749; Barry Dep., pp. 42, 68, 70-72, 82-86; Ables Dep., pp. 27-28, 74.) Plaintiff also inspected property damage, took photographs and prepared damage estimates. (Ex. F, pp. M0002747-M0002749.) Plaintiff also made coverage determinations. (Pl. Dep. I, p. 146.)

Plaintiff negotiated settlements with Safeco's insureds, with third-party claimants and with attorneys. He had full authority to settle claims within his established authority, and he recommended settlements for accidents outside his authority which were always approved by his supervisor. (Barry Dep., p. 86; Lebo Dep., pp. 41-42; Kabara Aff. ¶ 4.) If a claim resulted in litigation, Plaintiff was responsible for attending legal proceedings, evaluating testimony, collaborating with counsel and for making recommendations regarding litigation. (Ex. F, pp. M0002747-M0002749; Barry Dep., pp. 73, 84-85; Ables Dep., pp. 27-28, 74.) Plaintiff did more than merely reach an agreed cost of repair with repair shops – Plaintiff settled cases with customers, claimants and attorneys. (Ex. F, p. M0002749; Barry Dep., pp. 85-86; Karbara Aff., ¶ 4.)

The foregoing job duties are those of an insurance claims adjuster – not an automobile damage appraiser. There are genuine issues of material fact regarding the degree of discretion and independent judgment Plaintiff exercised in performing his job duties. In addition, the evidence in this case, when viewed in the light most favorable to Safeco, could

35

support a jury verdict in its favor.  Consequently, Plaintiff is not entitled to judgment as a matter of law and his Motion for Summary Judgment should be denied.

   C.   Plaintiff Is Not Entitled A Three Year Statute Of Limitations Or To An Award Of
        Liquidated Damages

        As Plaintiff is not entitled to judgment as a matter of law on his claim that he was misclassified as exempt prior to July 16, 2001, this Court should deny Plaintiff's claims that Safeco's willfully violated the FLSA and CMWA and that he is entitled to an award of liquidated damages.  Plaintiff's claim of willfulness and his claim for liquidated damages are based on: 1) his flawed and factually disputed assertion that he performed the same narrow range of automobile damage appraiser duties described in <u>AIAC</u>; and 2) on his continued attempt to distort and misrepresent the deposition testimony of Scott Ables.  (Mot. Summ. Judg., pp. 30-32.)[24]

        As set forth above, Plaintiff's claim that he performed the same automobile damage appraiser duties described in <u>AIAC</u> is utterly unsupported by the record and is, in fact, contradicted by his own Declaration.  The automobile damage appraisers in <u>AIAC</u> did not investigate and evaluate claims like Plaintiff did; they did not conduct scene investigations; they did not canvass for witnesses; they did not interview witnesses or obtain recorded statements; they did not participate in the litigation process on behalf of the defendant; and they did not settle claims with customers, claimants or attorneys.  This distinction was explained, in part, by Mr. Ables:

_____

[24]  In support of his claims, Plaintiff argues, in essence, that Mr. Ables became aware of Judge Covello's decision in <u>AIAC</u> in the mid-1990's; that Safeco employed a class of individuals with the title "automobile damage appraiser" who performed the same narrow range of duties inspecting and estimating automobile damage described in <u>AIAC</u>; that in response to <u>AIAC</u>, Mr. Ables changed the job title of these individuals to "Claims Representative" and failed to pay them overtime.  (Mot. Summ. Judg., pp. 30-31.)  Each one of these assertions is incorrect and utterly unsupported by the record.

> And when I say "appraiser," in the industry generally appraisers don't pay damages. They write an estimate and send it to the company or send it in to an inside person. But they don't pay damages and they don't become involved in casualty investigations and fraud investigations and things like that. And our appraisal staff did other things than just write estimates. So we didn't believe they were in that category.

(Ables Dep., p. 73.)

The plaintiffs in <u>AIAC</u> were automobile damage appraisers; Plaintiff was not. Plaintiff's request for an award of liquidated damages and his claim that Safeco willfully violated the FLSA and CMWA should be denied on these grounds alone.

In addition, Plaintiff's claims are based on a gross misrepresentation of Mr. Ables' testimony which should be rejected once again by this Court. Mr. Ables' testimony was clear. Sometime after 1990 but before 2001, Mr. Ables learned of some court decisions holding that automobile appraisers were non-exempt under the FLSA. (Ables. Dep., pp. 69-70.) Mr. Ables did not believe these decisions applied to Safeco's Claim Representatives who performed automobile damage assessment duties because these individuals "did more than appraiser work. . . . [W]e believed that our staff were not just appraisers, they did other things than just appraisals. They also paid claims, exercised various judgments, et cetera." (Ables Dep., p. 70.) Mr. Ables further testified that while Safeco had hired "very few" automobile appraisers from other companies, these individuals were integrated into the Claims Representative position and their roles were expanded to include additional duties beyond merely inspecting and appraising physical damage to automobiles. (Ables Dep., pp. 71-73.) Mr. Ables did not believe that these individuals were non-exempt because they did not "fit the appraiser title." (Ables Dep., p. 73.)

Plaintiff's attempt to paint a picture of intentional malfeasance by Mr. Ables is groundless. There is simply no evidence in the record supporting Plaintiff's claims for extending

37

the statute of limitations to three years and for an award of liquidated damages.  There is no evidence that Safeco employed a class of automobile damage appraisers as described in <u>AIAC</u>, no evidence that Plaintiff was an automobile damage appraiser as described in <u>AIAC</u>, no evidence that Mr. Ables became aware of <u>AIAC</u> shortly after the decision was issued in 1994 and no evidence that Safeco made the decision to "hide" its automobile appraisers under the title of "Claims Representative."  Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied in its entirety.


                                    THE DEFENDANT,
                                    SAFECO INSURANCE COMPANY
                                    OF AMERICA


                        BY:    _Margaret J. Strange_____
                                    Margaret J. Strange (ct08212)
                                    James F. Shea (ct16750)
                                    JACKSON LEWIS LLP
                                    55 Farmington Avenue, Suite 1200
                                    Hartford, CT 06105
                                    Ph. (860) 522-0404
                                    Fax (860) 247-1330
                                    email: strangem@jacksonlewis.com
                                    email: sheaj@jacksonlewis.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first-class mail, postage

prepaid, on this 14th day of March 2005 to the following counsel of record:


Anthony J. Pantuso III, Esq.
Hayber & Pantuso, LLC
221 Main Street, Suite 400
Hartford, CT 06106


William G. Madsen, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106


Attorneys for Plaintiff


*Margaret J. Strange*
Margaret J. Strange