UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

———————————————————————
                                                    :
WILLIAM E. MIKE,                                    :
          Plaintiff,                                :
                                                    :
V.                                                  :          CASE NUMBER:  3:02 CV 2239(DJS)
                                                    :
SAFECO INSURANCE COMPANY                            :
OF AMERICA,                                         :
          Defendant.                                :          MARCH 14, 2005
                                                    :
———————————————————————:

**DEFENDANT'S LOCAL RULE 56(a)(2) STATEMENT IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

          Pursuant to Local Rule 56(a)(2) of this District, SAFECO Insurance Company of

America ("Safeco" or "Defendant") respectfully submits the following Local Rule 56(a)(2)

Statement of disputed material facts.

1.     Safeco is a property and casualty insurance company that maintains a Claims Department

       for the purpose of investigating, evaluating, negotiating and settling claims, including

       automobile damage claims.  Barry Deposition, Exhibit B at 113-114.

**RESPONSE: Admitted.**

2.     Safeco employs personnel whose primary duties are the inspection and appraisal of

       damaged automobiles.  Mike Affidavit, Exhibit A, ¶ 14; Kabara Deposition, Exhibit C at

       36; "ORG 401 -- Introduction to the Claims Rep Position", Exhibit F at M0002747.

**RESPONSE:  Denied.**     (Declaration of William Mike, Ex. F, pp. M0002747-M0002749;

       Deposition of Scott Ables, pp. 27-28, 70-74; Deposition of Paul Barry, pp. 42, 52, 68;

       Deposition of Wayne Brown, p. 49; Deposition of Bill Lebo, pp. 64, 68-69; Affidavit of

       David Kabara, ¶¶ 4-7.)  Defendant further denies the factual contentions of Paragraph 2

on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

3.   Safeco has employed such personnel since at least the mid-1990s. Ables Deposition, Exhibit D at 70-74; "ORG 401 -- Introduction to the Claims Rep Position" Draft, Exhibit G.

**RESPONSE:  Denied.** (Ables Dep., pp. 69-74; Barry Dep., pp. 42, 52; Brown Dep., p. 49; Lebo Dep., pp. 64, 68-69.) Defendant further denies the factual contentions of Paragraph 3 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

4.   Some of these employees actually held the title of "Appraiser." Ables Deposition, Exhibit D at 71; Philip Deposition, Exhibit E at 24-25.

**RESPONSE:  Denied.** (Mike Dec., Ex. F, pp. M0002747-M0002749; Ables Dep., pp. 71-74; Barry Dep., pp. 42, 52; Brown Dep., p. 49; Lebo Dep., pp. 64, 68-69.) Defendant further denies the factual contentions of Paragraph 4 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

5.   At some time in the mid-1990's, Scott Ables, then Defendant's Director of Field Operations, became aware of a court ruling that automobile damage appraisers were non-exempt employees. Ables Deposition, Exhibit D at 69-70.

**RESPONSE: Denied.**   (Ables Dep., pp. 69-70.)   Defendant further denies the factual contentions of Paragraph 5 on the grounds that they are unsupported by Plaintiff's

2

citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

6.     Safeco took no steps after Mr. Ables became aware of this court ruling to determine whether any employees whose primary duties were to appraise damaged automobiles should be re-classified as non-exempt. Ables Deposition, Exhibit D at 72-73; Philip Deposition, Exhibit E at 26-29.

**RESPONSE: Denied.** (Ables Dep., pp. 70-74.) Defendant further denies the factual contentions of Paragraph 6 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

7.     Safeco instead chose to "clarify" their job title of "auto appraiser" by "integrating" them into the omnibus title of "Claims Representative." Ables Deposition, Exhibit D at 70-71.

**RESPONSE: Denied.** (Ables Dep., pp. 70-74.) Defendant further denies the factual contentions of Paragraph 7 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

8.     This decision was made by Mr. Ables, in consultation with Defendant's Director of Automobile Physical Damage, Tim Clark, and Defendant's Senior Vice President, Wayne Brown. Ables Deposition, Exhibit D at 75.

**RESPONSE: Denied.** (Ables Dep., pp. 70-74.) Defendant further denies the factual contentions of Paragraph 8 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

3

9.    "Claims Representative" also was the title used to describe Defendant's inside claims adjusters. "ORG 401", Exhibit F at M0002744.

**RESPONSE:  Admitted** that Safeco employed "Claims Representatives." Defendant **denies** the remaining factual contentions of Paragraph 9 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3).  Thus, Plaintiff's factual contentions are deficient and should be denied.

10.    The positions of inside Adjuster and outside Field Representative performed different duties.  Mike Affidavit, Exhibit A, ¶ 15; "ORG 401", Exhibit F.

**RESPONSE: Admitted** that Safeco employed "Claims Representatives."  **Denied** that Safeco employed Claims Representatives in the positions of "inside Adjuster" and "outside Field Representative." Defendant further **denies** the factual contentions of Paragraph 10 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3).  Thus, Plaintiff's factual contentions are deficient and should be denied.

11.    Only informally did Safeco employees use the more descriptive title of Field Rep.  Barry Deposition, Exhibit B at 37.

**RESPONSE: Admitted** that Mr. Barry testified that some individuals at Safeco used the term "Field Rep" to differentiate between Claims Representatives who worked primarily outside of the office from those who worked primarily inside the office.  (Barry Dep., p. 37.) Defendant **denies** the remaining factual contentions of Paragraph 11 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3).  Thus, Plaintiff's factual contentions are deficient and should be denied.

4

12.     In approximately 1995, Paul Barry, then Assistant Director of Field Operations, began

drafting a training module that described and defined the position of Claims Field

Representative. "ORG 401" Draft, Exhibit G; Barry Deposition, Exhibit B at 21.

**RESPONSE:** **Admitted** that Mr. Barry testified that he prepared a draft of the ORG 401

training manual in approximately 1995. (Barry Dep., pp. 21-22.) Defendant **denies** the

remaining factual contentions of Paragraph 12 on the grounds that they are unsupported

by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's

factual contentions are deficient and should be denied.

13.     The draft of this document then was circulated to five senior personnel, including Scott

Ables, the Director of Field Operations, and Tim Clark, the Director of Physical Damage.

Barry Deposition, Exhibit B at 18-19, 29.

**RESPONSE:** **Admitted** that Mr. Barry so testified

14.     This training module noted that, within the broader position of Field Representative, there

were a "variety of Rep positions, each with its own set of responsibilities." "ORG 401"

Draft, Exhibit G at 3; "ORG 401", Exhibit F at M0002746.

**RESPONSE:** **Admitted** that Plaintiff accurately quoted the ORG 401 training manual. **Denied**

that these are distinct positions within Safeco. (Barry Dep., pp. 42, 52.)

15.     The training module further identified the primary duties of the different types of Field

Reps. "ORG 401" Draft, Exhibit G at 3; "ORG 401", Exhibit F at M0002746-M0002747.

**RESPONSE: Denied.** (Mike Dec., Ex. F, pp. M0002746-M0002747; Barry Dep., pp. 42, 52.)

Defendant further **denies** the factual contentions of Paragraph 15 on the grounds that they

are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3).

Thus, Plaintiff's factual contentions are deficient and should be denied. The pages cited by Plaintiff say nothing about the primary duties of any position at Safeco.

16.    This training module describes the position of Physical Damage (PD) Rep as being responsible for inspecting and estimating auto losses. "ORG 401" Draft, Exhibit G at 3; "ORG 401", Exhibit F at M0002746.

**RESPONSE: Admitted** that the duties of a Claims Representatives who performed automobile damage appraisal duties included inspecting and estimating damage to automobiles. **Denied** that PD Rep is a job title at Safeco or an identifiable position. (Barry Dep., pp. 42, 52.)

17.    Both the draft and subsequent final version of "ORG 401" state that perhaps the most common function of the Field Claims Representative involves inspecting damages and preparing estimates, and that PD & Property Reps spend the majority of their time in this way. "ORG 401" Draft, Exhibit G at 3; "ORG 401", Exhibit F at M0002747.

**RESPONSE: Admitted** that Plaintiff accurately quoted the ORG 401 training manual. **Denied** that these are distinct positions within Safeco. (Barry Dep., pp. 42, 52.)

18.    Both the draft and subsequent final version of "ORG 401" state that inspecting damage includes examining the vehicle, taking photographs, preparing diagrams and writing an estimate. "ORG 401" Draft, Exhibit G at 3; "ORG 401", Exhibit F at M0002747.

**RESPONSE: Admitted** that Plaintiff accurately, but selectively and incompletely, quoted from the ORG 401 training manual. **Denied** that these are the only duties performed by Claims Representatives in the field. (Mike Dec., Ex. F, pp. M0002747-M0002749; Ables Dep., pp. 27-28, 74; Barry Dep., pp. 68, 70-73, 82-86; Brown Dep., p. 49; Lebo Dep., pp. 41-42, 46-47; Kabara Aff., ¶¶ 4-7.)

6

19.    The "ORG 401" document specifies the duties of the PD Rep position. Kabara

Deposition, Exhibit C at 57-58.

**RESPONSE:** **Denied** that Defendant employed anyone in the position of "PD Rep." (Barry

Dep., pp. 42, 52.)

20.    On April 1, 2000, Plaintiff William Mike was hired by Defendant as a PD Rep. Mike

Affidavit, Exhibit A, ¶ 3; Kabara Deposition, Exhibit C at 54.

**RESPONSE:** **Denied.** (Mike Dec., ¶¶ 3, 4; Barry Dep., pp. 42, 52.) Defendant further **denies**

the factual contentions of Paragraph 20 on the grounds that they are unsupported by

Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's

factual contentions are deficient and should be denied.

21.    Mr. Mike was trained as a PD Rep and given a license to use the "Pathways" software,

which was used exclusively to create estimates for damaged automobiles. Mike

Affidavit, Exhibit A, ¶¶ 5-12; Kabara Deposition, Exhibit C at 29-30.

**RESPONSE:** **Denied** that Plaintiff was employed as a PD Rep. (Mike Dec., ¶¶ 3, 4; Barry Dep.,

pp. 42, 52.) **Admitted** that Plaintiff received a license to use Pathways software.

22.    Among the materials with which Mr. Mike was trained was the "ORG 401" document,

Mike Affidavit, Exhibit A, ¶ 8.

**RESPONSE:** **Admitted** that Plaintiff so testified.

23.    Mr. Mike's duties were those of a PD Rep, as set forth in the "ORG 401" training

module. Mike Affidavit, Exhibit A, ¶¶ 11-13; Kabara Deposition, Exhibit C at 53-58.

**RESPONSE:** **Admitted** that Plaintiff testified that he performed the duties described in the

ORG 401 training manual, pp. M0002747-M0002749. **Denied** that Defendant employed

anyone in the position of "PD Rep." (Barry Dep., pp. 42, 52.)

24.     Mr. Mike's experience was consistent with the activities described by Mr. Barry and the duties described in the "ORG 401" training module. Mike Affidavit, Exhibit A, ¶¶ 11-13.

**RESPONSE: Admitted** that Plaintiff testified that he performed the duties described in the ORG 401 training manual, pp. M0002747-M0002749, and by Mr. Barry.

25.     Mr. Mike's primary duties throughout his employment were the inspection and appraisal of damaged automobiles. Mike Affidavit, Exhibit A, ¶¶ 13-14; Kabara Deposition, Exhibit C at 57-58.

**RESPONSE: Denied.** (Mike Dec., pp. M0002747-M0002749; Ables Dep., pp. 27-28, 74; Barry Dep., pp. 68, 70-73, 82-86; Brown Dep., p. 49; Lebo Dep., pp. 41-42, 46-47.)

26.     Mr. Mike did not determine whether Safeco was liable for a given claim or have the authority to deny liability; those decisions were made by Safeco's inside Adjusters. Mike Affidavit, Exhibit A, ¶ 15; Kabara Deposition, Exhibit C at 24-25.

**RESPONSE: Denied.** Plaintiff was responsible for analyzing when a claim included unrelated damage and for identifying fraudulent claims for which Safeco was not responsible. (Pl. Dep. I, pp. 58, 78-79, 148-51.)

27.     Mr. Mike was required to prepare all of his automobile appraisals following company guidelines, on penalty of discipline, up to and including termination. Mike Affidavit, Exhibit A, ¶ 19.

**RESPONSE: Admitted** that Plaintiff was expected to prepare automobile appraisals following company guidelines and that if he did not follow company guidelines, he, like any other employee, was subject to discipline.

8

28.    Mr. Mike was required to inspect all damaged vehicles assigned to him by Defendant's
       Adjusters.  Exhibit A, ¶ 17a; Kabara Deposition, Exhibit C at 24.

**RESPONSE:  Admitted** that Plaintiff so testified.

29.    All appointments for inspections had to be made within three days of receiving the
       assignment from the Adjuster.  Mike Affidavit, Exhibit A, ¶ 17b; Performance Review,
       Exhibit I at 2.

**RESPONSE: Denied.  (**Plaintiff's Performance Review, Mike Dec., Ex. I, p. 2.)

30.    Mr. Mike would drive to the location of the damaged vehicle, visually inspect and verify
       all damage to the vehicle, photograph the damage, and compile a list of the parts needed
       to repair the damage to the vehicle.  Mike Affidavit, Exhibit A, ¶¶ 17c-e; Kabara
       Deposition, Exhibit C at 25, 29.

**RESPONSE:  Admitted** that Plaintiff performed the duties described in this paragraph in
       addition to other duties.

31.    He would then enter the Vehicle Identification Number ("VIN number") into the
       "Pathways" vehicle repair estimate program on a laptop computer, both of which were
       provided by Defendant.  Mike Affidavit, Exhibit A, ¶¶ 16, 17f.

**RESPONSE:  Admitted** that Plaintiff performed the duties described in this paragraph in
       addition to other duties.

32.    The VIN number allowed "Pathways" to provide him with almost all the information
       about the vehicle necessary for Mr. Mike to prepare and complete his appraisal, including
       all optional equipment, the cost of all parts, the "book time" for labor and paint, and the
       potential availability of used parts of like kind and quality (LKQ parts) and after-market

(AM) parts.  Mike Affidavit, Exhibit A, ¶ 17f; Sample "Pathways" Estimate, Exhibit H at

SAF-174.

**RESPONSE:  Admitted** that Plaintiff so testified.  The Pathways estimate attached to the Mike

Declaration as Exhibit H is dated November 11, 2002 – well after Plaintiff's

reclassification on July 16, 2001 and well outside the time frame relevant to this matter.

Thus, as Exhibit H is not admissible at trial, the Court should disregard Exhibit H as

required by Local Rule 56(a)(3).

33.    Using company guidelines, Mr. Mike determined whether these parts could be repaired or

needed to be replaced.  Mike Affidavit, Exhibit A, ¶ 17g.

**RESPONSE:  Admitted** that Plaintiff performed the duties described in this paragraph in

addition to other duties.

34.    If parts needed replacing, he would attempt to locate LKQ parts through Defendant's

"QRP" computer program, or, if LKQ parts were not available, AM parts.   Mike

Affidavit, Exhibit A, ¶ 17h.

**RESPONSE:  Admitted** that Plaintiff performed the duties described in this paragraph in

addition to other duties.

35.    If either hand-repair or "frame-pulling" was required to repair the vehicle, he would agree

with the repair shop upon the number of hours of labor for which Defendant would pay.

Mike Affidavit, Exhibit A, ¶ 17j.

**RESPONSE:  Admitted** that Plaintiff performed the duties described in this paragraph in

addition to other duties.

36.    Mr. Mike then would enter the information gleaned from the visual inspection and

photographs, the availability of either LKQ parts or AM parts and, if necessary, the

agreed-upon number of hours for hand-repair or "frame-pulling" into the "Pathways".
Mike Affidavit, Exhibit A, & 17k; Kabara Deposition, Exhibit C at 29.

**RESPONSE: Admitted** that Plaintiff performed the duties described in this paragraph in
addition to other duties.

37.    "Pathways" then would generate an estimate that included the cost of each part to be
replaced, the "book value" for labor times for repair, replacement and painting, and any
adjustments for items such as the insurance deductible. Mike Affidavit, Exhibit A, ¶ 17f;
Sample "Pathways" Estimate, Exhibit H at SAF-174 through SAF-177.

**RESPONSE: Admitted** that Plaintiff performed the duties described in this paragraph in
addition to other duties. The Pathways estimate attached to the Mike Declaration as
Exhibit H is dated November 11, 2002 – well after Plaintiff's reclassification on July 16,
2001 and well outside the time frame relevant to this matter. Thus, as Exhibit H is not
admissible at trial, the Court should disregard Exhibit H as required by Local Rule
56(a)(3).

38.    "Pathways" also would alert Mr. Mike to the possible availability of LKQ or AM parts.
Mike Affidavit, Exhibit A, ¶ 17f; Sample "Pathways" Estimate, Exhibit H at SAF-178
through SAF-179.

**RESPONSE: Admitted** that Plaintiff performed the duties described in this paragraph in
addition to other duties. The Pathways estimate attached to the Mike Declaration as
Exhibit H is dated November 11, 2002 – well after Plaintiff's reclassification on July 16,
2001 and well outside the time frame relevant to this matter. Thus, as Exhibit H is not
admissible at trial, the Court should disregard Exhibit H as required by Local Rule
56(a)(3).

11

39.    Mr. Mike then would print the repair estimate as generated by "Pathways" and issue payment for the amount of the repair estimate.  Mike Affidavit, Exhibit A, ¶ 17l; Kabara Deposition, Exhibit C at 30.

**RESPONSE:  Admitted** that Plaintiff performed the duties described in this paragraph in addition to other duties.

40.    Mr. Mike had no authority to deviate from the figure generated by "Pathways."  Mike Affidavit, Exhibit A, ¶ 20.

**RESPONSE:  Admitted** that Plaintiff so testified.

41.    If an estimate exceeded Mr. Mike's limit of authority, he was required to get approval from his supervisor before issuing payment.  Mike Affidavit, Exhibit A, ¶ 27.

**RESPONSE:  Admitted** that Plaintiff so testified.

42.    If the cost to repair the vehicle exceeded 70 % of the vehicle's value, "Pathways" would generate a warning notice, and Mr. Mike was required to declare the vehicle a total loss.  Mike Affidavit, Exhibit A, ¶ 23; Kabara Deposition, Exhibit C at 28.

**RESPONSE:  Admitted** that Plaintiff so testified.

43.    He then would obtain a total loss value from CCC (an independent valuation company), obtain documentation from the owner of any improvements to the vehicle, call CCC to re-value the vehicle based upon any such documented improvements and inform the owner of the re-valuation.  Mike Affidavit, Exhibit A, ¶ 23.

**RESPONSE:  Admitted** that Plaintiff so testified.

44.    If the owner accepted the valuation, Mr. Mike arranged to have the vehicle transferred from storage to a salvage lot, and also arrange for the transfer of the vehicle's title from the owner to the Defendant.  Mike Affidavit, Exhibit A, ¶ 23e.

**RESPONSE: Admitted** that Plaintiff so testified.

45.     Mr. Mike had no authority to negotiate with the owner over the total loss valuation. Mike Affidavit, Exhibit A, ¶ 24.

**RESPONSE: Denied.** (Barry Dep., pp. 76-77; Kabara Aff., ¶ 8.)

46.     If the owner did not accept the valuation, Mr. Mike was required to return the file to the Adjuster. Mike Affidavit, Exhibit A, ¶ 24.

**RESPONSE: Admitted** that Plaintiff so testified.

47.     In addition to these initial inspections, Mr. Mike also was required to perform re-inspections for hidden damage not observed on the initial inspection, if so requested by the owner or the repair shop, and, if necessary, issue a supplemental estimate to cover any such hidden damage. Mike Affidavit, Exhibit A, ¶ 25.

**RESPONSE: Admitted** that Plaintiff so testified.

48.     He also was required to review files to ensure that all assigned tasks had been completed, and to document all assigned tasks on the Defendant's "CVO" computer system. Mike Affidavit, Exhibit A, ¶ 26.

**RESPONSE: Admitted** that Plaintiff so testified.

49.     Mr. Mike's performance of these tasks and adherence to company guidelines was closely monitored by his supervisors. Mike Affidavit, Exhibit A, ¶ 28; LaFrance Deposition, Exhibit J at 7-9.

**RESPONSE: Denied.** Defendant denies the factual contentions of Paragraph 49 on the grounds that they are unsupported by either 1) the affidavit of a witness competent to testify to the facts at trial; or 2) evidence that would be admissible at trial as required by Local Rule 56(a)(3). Plaintiff has no personal knowledge to testify whether his supervisors closely

monitored his performance.  Thus, the Court should disregard Plaintiff's reliance on Paragraph 28 of the Mike Declaration.  In addition, Mr. LaFrance's testimony is not admissible at trial as he did not commence employment with Defendant until September 2002 – over a year after Plaintiff was reclassified as non-exempt.  Thus, Plaintiff's factual contentions are deficient and should be denied.

50.    Jeffrey LaFrance, David Kabara's successor as Unit Manager, monitored his subordinates' work by reviewing estimates on the computer and by reinspecting approximately 30% of their appraisals.  LaFrance Deposition, Exhibit J at 7-9; Mike Affidavit, Exhibit A, ¶ 28.

**RESPONSE: Denied.**  Defendant denies the factual contentions of Paragraph 50 on the grounds that they are unsupported by either 1) the affidavit of a witness competent to testify to the facts at trial; or 2) evidence that would be admissible at trial as required by Local Rule 56(a)(3).  Plaintiff has no personal knowledge to testify how his supervisors monitored his performance.  Thus, the Court should disregard Plaintiff's reliance on Paragraph 28 of the Mike Declaration.  In addition, Mr. LaFrance's testimony is not admissible at trial as he did not commence employment with Defendant until September 2002 – over a year after Plaintiff was reclassified as non-exempt.  Thus, Plaintiff's factual contentions are deficient and should be denied.

51.    Deviation from the company guidelines subjected Mr. Mike to disciplinary action, up to and including termination.  Mike Affidavit, Exhibit A, ¶¶ 19, 29; 10/28/2002 Action Plan, Exhibit K.

**RESPONSE: Admitted** that Plaintiff, as any other employee of the company, was subject to discipline for failure to follow company guidelines relating to his job performance.  The

14

Action Plan attached to Plaintiff's Motion for Summary Judgment as Exhibit K is dated October 28, 2002 – well after Plaintiff's reclassification on July 16, 2001 and well outside the time frame relevant to this matter. Thus, as Exhibit K is not admissible at trial, the Court should disregard Exhibit K as required by Local Rule 56(a)(3).

52.    On March 5, 2001, the California Court of Appeals, First District, issued its decision in *Bell v. Farmers Insurance Exchange*, 87 Cal. App. 4th 805 (2001), which held that "inside" claims representatives were not exempt employees under California's state wage and hour laws. Defendant's Response to Interrogatory No. 3, Exhibit L.

**RESPONSE:** Defendant neither admits or denies the allegations of Paragraph 52. The case cited by Plaintiff speaks for itself.

53.    The Defendant responded to this decision by deciding to reclassify all of its "Claims Representatives," including both inside and outside and including PD Reps. Defendant's Response to Interrogatory No. 3, Exhibit L; Lebo Deposition, Exhibit M at 65.

**RESPONSE:** **Admitted** that Defendant reclassified its Claims Representatives effective July 16, 2001 after the decision in <u>Bell</u>. **Denied** that Defendant employed anyone in the position of "PD Rep." (Barry Dep., pp. 42, 52.)

54.    On July 17, 2001, the Defendant reclassified the positions of "Claims Representative," *inter alia*, which included the position of PD Rep held by Mr. Mike, from exempt to non-exempt. Mike Affidavit, Exhibit A, ¶ 33; Reclassification e-mail, Exhibit N.

**RESPONSE:** **Admitted** that Defendant reclassified its Claims Representatives effective July 16, 2001. **Denied** that Defendant employed anyone in the position of "PD Rep." (Barry Dep., pp. 42, 52.)

15

55. An e-mail that stated that the reclassification was based, in part, on a desire to "respond to recent legal developments" was sent on July 17, 2001 to, *inter alia*, all PD Reps, including Mr. Mike. Mike Affidavit, Exhibit A, ¶¶ 33, 34; Reclassification e-mail, Exhibit N.

**RESPONSE: Admitted** that Plaintiff correctly quoted from an email from Jim Schmidt dated July 17, 2001. **Denied** that Defendant employed anyone in the position of "PD Rep." (Barry Dep., pp. 42, 52.)

56. Among the senior executives who decided to reclassify these employees, including Mr. Mike, and not pay retroactive overtime compensation was Scott Ables, Safeco's Vice President of Claims, Ables Deposition, Exhibit D at 69-70.

**RESPONSE: Denied.** Defendant denies the factual contentions of Paragraph 56 on the grounds that they are unsupported by Plaintiff's citations to the record as required by Local Rule 56(a)(3). Thus, Plaintiff's factual contentions are deficient and should be denied.

57. On or about July 17, 2001, a memorandum regarding the reclassification was distributed to all affected employees, including Mr. Mike. Mike Affidavit, Exhibit A, ¶¶ 36-37; Reclassification memorandum, Exhibit O.

**RESPONSE: Admitted.**

58. This memorandum noted that "your job duties have not changed. The only change is that you are now eligible for overtime pay." Reclassification memorandum, Exhibit O, item 6.

**RESPONSE: Admitted** that Plaintiff correctly quoted from the reclassification memorandum dated July 17, 2001.

59.    This memorandum also stated that the reclassification was based, in part, on a desire to "respond to recent legal developments."  Reclassification memorandum, Exhibit O, item 3.

**RESPONSE: Admitted** that Plaintiff correctly quoted from the reclassification memorandum dated July 17, 2001.

60.    This memorandum also stated that the reason the positions were considered non-exempt was because under the Fair Labor Standards Act, as well as applicable state laws, employees classified as non-exempt are eligible for overtime pay.  Exhibit O, item 4.

**RESPONSE:   Admitted** that Plaintiff correctly quoted from the reclassification memorandum dated July 17, 2001.

81.    Following the reclassification, Safeco failed to pay retroactive compensation to Mr. Mike for overtime worked before the reclassification.  Mike Affidavit, Exhibit A, ¶ 41.

**RESPONSE: Admitted.**

82.    Following the reclassification, Safeco did not inform Mr. Mike that he was eligible for such compensation.  Mike Affidavit, Exhibit A, ¶ 39.

**RESPONSE: Admitted** that Plaintiff was not paid retroactive overtime compensation because he was not eligible for such compensation.

## DISPUTED ISSUES OF MATERIAL FACT

Pursuant to Local Rule 56(a)(2), Defendant contends that there are genuine issues as to each of the following material facts to be tried:

1.    The amount of discretion and independent judgment Plaintiff exercised in appraising physical damage to automobiles.

17

2.     The amount of discretion and independent judgment Plaintiff exercised in conducting scene investigations.

3.     The amount of discretion and independent judgment Plaintiff exercised in obtaining recorded statements.

4.     The amount of discretion and independent judgment Plaintiff exercised in attending trials, depositions and hearings and other legal procedings.

5.     The amount of discretion and independent judgment Plaintiff exercised in conducting negotiations and settling claims.

6.     The amount of discretion and independent judgment Plaintiff exercised in performing any other duties in the course of his employment as a Claims Representative.

THE DEFENDANT,
SAFECO INSURANCE COMPANY
OF AMERICA

BY:    _Margaret J. Strange_____
Margaret J. Strange (ct08212)
James F. Shea (ct16750)
JACKSON LEWIS LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105
Ph. (860) 522-0404
Fax (860) 247-1330
email: strangem@jacksonlewis.com
email: sheaj@jacksonlewis.com

18

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid, on this 14th day of March 2005 to the following counsel of record:

Anthony J. Pantuso III, Esq.
Hayber & Pantuso, LLC
221 Main Street, Suite 400
Hartford, CT 06106
Tel. (860) 522-8888

William G. Madsen, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106
Tel. (860) 246-2466

_Margaret J. Strange_
Margaret J. Strange

H:\Client Folder\S\Safeco\Mike\Summary Judgment\Local Rule 56(a)(2) Statement.doc
64406