EXHIBIT 3

# COPY OF TRANSCRIPT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM E. Mike, individually and
On behalf of other similarly
situated Individuals

       Plaintiffs,

vs.               Civil Action No: 3:02 cv 2239 (DJS)

SAFECO INSURANCE COMPANY OF
AMERICA

       Defendant.

_____

DEPOSITION OF PAUL BARRY
Taken on behalf of the Plaintiffs
August 25, 2003

- - -

    BE IT REMEMBERED THAT, pursuant to the Washington
Rules of Civil Procedure, the telephone deposition of
Paul Barry was taken before Marta M. Rice, CSR No. 2050,
a Certified Shorthand Reporter, and a Notary Public for
the State of Washington, on August 25, 2003, commencing
at the hour of 9:19 a.m., the proceedings being reported
at Safeco Insurance, Safeco Plaza, 4333 Brooklyn Avenue
NE, Seattle, Washington.

## NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000

Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

National: (800) 528-3335

www.naegelireporting.com

Fax: (503) 227-7123

Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

```
1        A.    There would occasionally be physical damage claims
2   associated with an injury claim.  And the adjusters who
3   reported to me would have involvement in the settlement of
4   those claims, but not the estimating portion.
5        Q.    Okay.  And just so that I'm clear, when you're
6   referring to physical damage claims that -- you're referring
7   to damage to automobiles?
8        A.    Correct.
9        Q.    Okay.  Then -- let's see.  So, now, you assumed
10  that position in roughly March of 2000?
11       A.    Yes.
12       Q.    What position did you hold before that?
13       A.    Before that I was director of automation and
14  training.
15       Q.    And how long did you hold that position?
16       A.    I think I began that job in January of '98.
17       Q.    So roughly January of '98 through March of 2000?
18       A.    Correct.
19       Q.    Can you tell me what your duties and
20  responsibilities were in that position?
21       A.    I was responsible for the development and
22  implementation of claims systems and for the creation of
23  training materials for the field to use.
24       Q.    Okay.  So you say "the development and
25  implementation of claims systems?"
```

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    BY MR. PANTUSO:

2        Q.    Okay.    And that would be, "Any and all documents

3    that in any way relate to the creation, development, and/or

4    production of the Training Materials, including notes,

5    minutes, drafts and/or earlier versions of such documents."

6    Is that correct?

7        A.    Correct.

8        Q.    Okay.    And, also, just to note for the record, in

9    using the term "Training Materials" in deposition notice

10   we've specifically defined that to mean, the document that

11   was previously produced by Safeco document number -- page

12   numbers 2739 through 2751.    It's entitled, "ORG 401,

13   Introduction to the Claims Rep Position."    Now, the the

14   document that we marked as -- as Exhibit No. 2, is this an

15   earlier version of the ORG 401 document?

16       A.    No, this would be a draft of it.

17       Q.    Can you tell me when this Exhibit 2 was created?

18       A.    I don't know the exact dates, but I believe it

19   was in 1995.

20                  MR. PANTUSO:    I would ask the reporter

21   to mark the final version, the ORG 401 document, mark that

22   as Exhibit 3.

23                  (Whereupon, ORG 401, Introduction to the

24   Claims Rep Position, final version, was marked Exhibit-3 for

25   identification.)

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544



Seattle, WA
(206) 622-3376

Spokane, WA
(509) 838-6000

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    BY MR. PANTUSO:

2        Q.    Now, Exhibit 2, you think -- you say you believe

3    this was created in 1995?

4        A.    I believe so.

5        Q.    Okay.  Can you tell me specifically who was

6    involved in creating this document?

7        A.    Well, I -- I -- I believe I was.  And beyond

8    that I really don't remember.  It was many years ago, and

9    we didn't document specifically who worked on it.

10       Q.    Now, Mr. Barry, are there any -- now in existence

11   any sort of notes that were used in the creation of either

12   Exhibit 2 or Exhibit 3?

13               MS. STRANGE:  Objection.

14               THE WITNESS:  I do not have anything

15   else.  The only thing that I have was this Exhibit 2, and

16   I don't have any other notes or files remaining on this.

17       BY MR. PANTUSO:

18       Q.    Okay.  Did you -- well, what sorts of efforts did

19   you make to locate any sort of -- any other documents that

20   would be responsive to that first request for production of

21   documents?

22       A.    I went through any files that I have and I went

23   through the LAN -- some folders on the LAN, which were some

24   of my old files.  And that's actually where I came across

25   this document.

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    Q.   Okay.  If you needed to find that information

2    out, how would you go about doing it?

3    A.   Well at the time, I mean, it just -- I knew them

4    or -- I mentioned earlier Bob Nelson, in education, would

5    have known who they were and just mailed it to their

6    attention.

7    Q.   Now -- now, this document Exhibit 2, can you

8    describe for me specifically the process of how this

9    document was created?

10    A.   Well, I don't remember the specifics of creating

11    it to be honest.  We -- we were taking an old training

12    program that was essentially two large binders, that had

13    predated this some years earlier, and I was putting it into

14    this modular format.  The old materials were really -- not

15    very relevant.  And so we were trying to broaden the

16    training and give a better basis of understanding about what

17    we did.  So I authored a variety of modules at the time.

18    And to be honest, they've kind of all run together.

19    Q.   Okay.  Do you know specifically who wrote the

20    document we've marked as Exhibit 2?

21    A.   I believe I did.

22    Q.   Okay.  And from where did you get the information

23    that is contained in Exhibit 2?

24    A.   This was just general information.  It was just

25    -- I just authored it based on my knowledge and experience

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Seattle, WA
(206) 622-3376

Spokane, WA
(509) 838-6000



Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    within the company.

2        Q.   And at any time with your employment with Safeco

3    had you been a field representative?

4        A.   Yes.

5        Q.   Okay.   When were you a field representative?

6        A.   I believe in 1987.   I did --

7        Q.   From 1987 up until when?

8        A.   I -- I don't remember the exact dates.   I was a

9    field rep for about one year in 1987.

10       Q.   I want to go through some of the -- the

11   specifics.   Well -- yeah.   Before -- before we get to that

12   though -- okay.   Do you believe you drafted this document,

13   Exhibit 2, and the information contained in it was based

14   upon your own knowledge and experience?

15       A.   Correct.

16            MS.   STRANGE:   Objection to the form.

17   BY MR.   PANTUSO:

18       Q.   Is -- is that true?   Is that --

19       A.   Yes.

20       Q.   -- where?

21       A.   Yes.

22       Q.   Let me -- let me rephrase the question.   Okay.

23   Other than relying upon your own knowledge and experience,

24   were there any other sources for the information contained

25   in Exhibit 2?

**NAEGELI REPORTING CORPORATION**

Portland, OR                                    Seattle, WA
(503) 227-1544                                  (206) 622-3376

Spokane, WA                    Coeur d'Alene, ID
(509) 838-6000                                  (208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    frame I'm asking.

2                    THE WITNESS:    Okay.

3        BY MR. PANTUSO:

4        Q.    Other than the types of repair facilities that the

5    PD rep might be dealing with, how else would a PD reps job

6    vary based on whether the location wrote more personal lines

7    or commercial lines?

8        A.    Well, it's kind of -- you know, there isn't

9    really -- to my knowledge there was never an actual job

10   title of PD rep.    It was more a phrase of convenience to

11   distinguish somebody who had skills in writing an auto

12   versus a property rep or somebody.

13                   When you say "a PD rep," well, a PD

14   rep may also need to attend depositions or may need to

15   participate, you know -- you know, solve kinds of

16   investigations, scenes investigates.    It's not that the PD

17   rep quote, unquote was an exclusive position that did or

18   didn't do certain functions.    It was more of a function

19   that a claims rep would perform.    Am I answering your

20   question?

21                   MR. PANTUSO:    Well, not really.    But --

22                   MS. STRANGE:    Well, you can rephrase

23   the question, though, because he -- he did provide an

24   answer.    So I don't think saying "not really," is -- is

25   entirely fair to the witness.    So --

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    correct?

2         A.    Yes, that's what's in the document.

3         Q.    Okay.    From where did you get the information

4    regarding the different types of field claims

5    representatives?

6         A.    Again, it was general.    You know, essentially

7    common knowledge within the organization that we had people

8    who might perform different functions, and who maybe be

9    trained on different systems and procedures.

10        Q.    Other than the -- the five that you've listed

11   here in this document, are there any other types of field

12   representatives?

13        A.    Well, these aren't -- there isn't, as a mentioned

14   earlier, an official title for these.    They're really kind

15   of more a matter of convenience when referring to the

16   functions a person might perform.    So, no.    I mean, this is

17   -- these were descriptive terms to describe what kinds of

18   functions a person might perform.

19        Q.    Okay.    Now, if you look -- the first paragraph

20   under the heading of Types of Field Claims representatives,

21   it states, "Before looking at the specific function of the

22   Field representative, it is important to understand that

23   there are a variety of different Rep positions, each with

24   its own set of responsibilities."

25        A.    Okay.

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335     www.naegelireporting.com     Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    estimates.

2        BY MR. PANTUSO:

3        Q.   Did they spend the majority of their time

4    inspecting damages and preparing estimates?

5            MS. STRANGE:   Objection.   I'm not sure

6    that he was done with his answer.

7            THE WITNESS:   What -- they prepared a

8    lot of estimates and the other functions that go along with

9    that.   Getting an agreed cost to prepare, negotiating total

10   losses.   You know, I wouldn't want to characterize it as

11   just writing estimates.   They did all the other things that

12   were necessary to conclude a claim.

13       BY MR. PANTUSO:

14       Q.   Okay.   But -- again, my -- my question to you

15   is, these Reps that reported to you, did they -- well --

16   well, let me make sure that -- that we're both talking in

17   the same terminology here first of all.   In -- when Reps

18   inspect a vehicle and prepares an estimate that include --

19   does that include reaching an agreed cost of repair with

20   either the vehicle owner or the body shop?

21       A.   It does at Safeco.   There are other insurance

22   carriers, I believe, that they have people who simply write

23   estimates.   But our Field Reps were expected to do more in

24   the adjustment and handling of the claim.

25       Q.   Okay.   So when we're talking about inspecting

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335      www.naegelireporting.com      Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1  back to the items that are listed under Rep Duties in

2  Exhibit 3.

3                    THE WITNESS:    Okay.

4      BY MR. PANTUSO:

5      Q.    The second item that's listed is "Scene

6  Investigation."    What portion of their time do Field Reps

7  spend doing scene investigations?

8                    MS. STRANGE:    Objection.

9                    THE WITNESS:    There is no way to answer

10  that question on a -- \on a broad basis.    I mean, again, it

11  just depends too much on the individual and the territory

12  and the geography they handled.    Some people may have

13  written them very rarely, others did it all the time.

14      BY MR. PANTUSO:

15      Q.    Okay.  Well, let me ask you this.    Under Scene

16  Investigations you identify various steps, including a scene

17  diagram, photographs, a witness canvassing.    Is this an

18  accurate description of what is involved in conducting a

19  scene investigation?

20      A.    I would not call it an exhaustive list, but I

21  would say those are key steps in performing one.

22      Q.    Okay.    Is it accurate?

23                    MS. STRANGE:    Objection.    He's answered

24  the question.

25                    MR. PANTUSO:    Well, Peggy, he's told me

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1  he didn't think it was exhaustive but they were key steps.

2       BY MR. PANTUSO:

3       Q.  My question is, is this an accurate description?

4                    MS. STRANGE:  He's answered the

5   question.  If you don't like his answer you need to just

6   ask a different.  And he's answered as he understood it.

7                    MR. PANTUSO:  Well, Peggy, your

8   objection is noted, my question stands and I would like an

9   answer.

10                    MS. STRANGE:  Okay.  What is your

11  question?  Just for the record.

12                    MR. PANTUSO:  My question is, is a

13  description of a scene investigation, is this an accurate

14  description of what is involved in performing a scene

15  investigation?

16                    MS. STRANGE:  Okay.  Objection.

17                    THE WITNESS:  And my answer is, it is

18  -- these are all accurate key steps in conducting a scene

19  investigation, but it is not an exhaustive list of every

20  possible think that you might do in one.

21      BY MR. PANTUSO:

22      Q.  Are these the major steps that would be involved

23  in performing a scene investigation?

24      A.  Yes.  I think that -- that's correct.

25      Q.  Okay.  So these -- are there any other steps that

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544



Seattle, WA
(206) 622-3376

Spokane, WA
(509) 838-6000

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    are not listed here that would be considered primary steps

2    in performing a scene investigation?

3         A.    It would depend on the individual scene

4    investigation and what other information might be revealed

5    that you would need to follow up on.  But I think it's a

6    fair statement that these are the major steps that -- that

7    you would perform.

8         Q.    Now, the next item that's listed under Rep Duties

9    is Recorded Statements.  How often is a Field Rep required

10   to take a recorded statement?

11        A.    Again, it would depend on the individual person

12   and the -- what they -- the kind of assignments that they

13   get.

14        Q.    Is this something that is typically done in every

15   claim?

16        A.    Recorded statements are very common and we do take

17   them on a large number of claims.  Some are taken inside,

18   some may be taken outside by the Field Rep depending on

19   what's necessary for the individual claim.

20        Q.    Now, is this -- taking recorded statements, is

21   this something that -- a function that would be performed by

22   PD Reps?

23        A.    It could be.

24        Q.    How often would a PD Rep be called upon to take

25   a recorded statement?

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1        MS. STRANGE:    Objection.

2            THE WITNESS:    Again, it would totally

3    depend on the individual and the particular claims that they

4    were handling.    There is no pat answer that applies to all.

5        BY MR. PANTUSO:

6        Q.    The next item that's listed under there is "Trial,

7    Deposition, and Hearing Attendance."    How often would a PD

8    Rep be called upon to attend a trial, deposition, or

9    hearing?

10        A.    Again, it would depend on the particular person,

11    their skill and experience, and jurisdiction and the -- the

12    need in that area.

13        Q.    In general, how often is this required of a PD

14    Rep?

15            MS. STRANGE:    Objection.

16            THE WITNESS:    I don't think I can

17    answer that question.

18            MR. PANTUSO:    The last item that's

19    listed under Rep Duties is "Face-to-face negotiations."

20            THE WITNESS:    Um-hmm.

21        BY MR. PANTUSO:

22        Q.    And, again, just so that I'm clear, all of these

23    descriptions and duties that we've been discussing here,

24    this is all language that was written by you?

25        A.    Yes, I believe so.

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

A.   The person doing the estimating would need to determine if a part needed to be a repaired or needed to be replaced.   And if it's to be repaired they would have to estimate how much time would be allotted for the repair. They would need to decide if it was -- to use an OEM part or, you know, alternative parts.   There's quite a number of decisions that are made in the course of preparing an estimate.

Q.   Okay.   Well, can you give me a listing?   What are the -- what are the others ways in which a PD will exercise independent discretion and judgment when inspecting and estimating damages?

A.   Well --

MS. STRANGE:   Objection.

THE WITNESS:   Well, as I mentioned earlier, they may have concerns about the maintenance of the home or the auto, in which case they would need to make a decision whether to notify underwriting and, you know, if necessary, advise them of what they believe to be an issue.

There'd be negotiations in dealing with the customers.   If the vehicle's a total loss they have to determine the value of the vehicle and negotiate with the vehicle owner.   It may require working with banks and lending institutions and negotiating with them on a solution.

**NAEGELI REPORTING CORPORATION**



Portland, OR
(503) 227-1544

Seattle, WA
(206) 622-3376

Spokane, WA
(509) 838-6000

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335   www.naegelireporting.com   Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1              There's -- there's virtually no end to

2     what could happen.  I mean, again, every claim is unique

3     and has its own set of circumstances.  And the Field Rep

4     has to be able to adapt -- adapt to the situation.

5          BY MR. PANTUSO:

6          Q.   Okay.  Now, as far as -- and I want to focus

7     just on -- on PD Reps, on autos, motor vehicles.  As far

8     as determining whether something -- something needs to be

9     repaired versus replaced, does Safeco provide any guidelines

10    on how they should go about doing that?

11                   MS. STRANGE:   Objection.

12                   THE WITNESS:   You know, it's been many

13    years since I did estimating, so I don't know current ly

14    what's going in that area.

15         BY MR. PANTUSO:

16         Q.   Well, question number one, who would know the

17    answer to that question?

18                   MS. STRANGE:   Objection.   You're asking

19    for the period now?

20                   MR. PANTUSO:   Again, I'll ask for the

21    period between the creation of Exhibit 2 in 1995 and July

22    of 2001.

23                   THE WITNESS:   I believe Tim Clark who

24    was director of physical damage at the time.

25         BY MR. PANTUSO:

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335     www.naegelireporting.com     Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

```
 1                    MS.  STRANGE:   Okay.  Do you have any
 2      idea how much more time you're looking at?
 3                    MR.  PANTUSO:   Maybe another 15, 20
 4      minutes.
 5                    MS.  STRANGE:   Okay.
 6                    (Recess.)
 7                    MR.  PANTUSO:   Okay.  Back on the
 8      record.
 9           BY MR.  PANTUSO:
10           Q.   Okay.  And, Mr. Barry, just before we get back
11      into the questioning, I want to ask you, during the break
12      did you have a conversation with counsel?
13           A.   No.
14           Q.   Okay.  Going back to Exhibit No. 3 under the
15      Rep's Duties, did -- we've been through the Inspect and
16      Estimate Damages.  Scene Investigations.  Can you tell me
17      how a PD Rep would exercise independent discretion and
18      judgment in performing scene investigations?
19                    MS.  STRANGE:   Objection.
20                    THE WITNESS:   Depending on what they
21      saw at the investigation and different types of
22      investigations in a property loss, there may be the need to
23      do a witness canvas for witnesses.  Determine what angle to
24      pursue.  How large an area to investigate.
25           BY MR.  PANTUSO:
```

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335      www.naegelireporting.com      Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    Q.   Does Safeco -- I'm sorry.  Were you finished with

2    your answer?

3    A.   Yes.

4    Q.   Does Safeco provide any sort of guidelines to PD

5    Reps on how to perform scene investigations?

6              MS. STRANGE:   Objection.

7              THE WITNESS:   Not that I recall.

8    BY MR. PANTUSO:

9    Q.   Can you think of any other ways in which PD Reps

10   would be called upon to exercise independent judgment and

11   discretion in performing a scene investigation?

12   A.   No.

13   Q.   Okay.  And then we have Recorded Statements.  Can

14   you tell me how a PD Rep would be -- would exercise

15   independent judgment and discretion in taking recorded

16   statements?

17             MS. STRANGE:   Objection.

18             THE WITNESS:   Actually, they would need

19   quite a bit of judgment because it's -- you know, you're

20   taking a statement, trying to ascertain the facts of a

21   situation, and so you have to pursue all the avenues and --

22   and follow-up questions determining what's a critical issue

23   and what's not, and deciding whether to pursue a line of

24   questioning or not.

25   BY MR. PANTUSO:

NAEGELI REPORTING CORPORATION

Portland, OR
(503) 227-1544

Seattle, WA
(206) 622-3376

Spokane, WA
(509) 838-6000



Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    Q.    Does Safeco provide PD Reps with any sort of

2    guidelines on what subject areas to inquire into when they

3    take recorded statements?

4    A.    We had some general templets about major areas to

5    investigate.    But the -- how far to pursue a particular

6    line of questioning is up to the discretion of the Field

7    Rep.

8    Q.    Other than determining how far to pursue a

9    particular line of questioning, are there any other ways in

10   which a PD Rep would be required to exercise independent

11   discretion and judgment when taking recorded statements?

12                 MS. STRANGE:    Objection.    Other than

13   what he's already testified to?

14                 MR. PANTUSO:    Yes.

15                 THE WITNESS:    Just perhaps the need to

16   follow up with other witnesses and take additional

17   statements.

18   BY MR. PANTUSO:

19   Q.    Anything else?

20   A.    I think that covers it.

21   Q.    And we've got Trial Deposition and Hearing

22   Attendance.    Is there any way in which PD Reps exercise

23   independent discretion and judgment in their attendance at

24   trials, depositions, or hearings?

25                 MS. STRANGE:    Objection.

**NAEGELI REPORTING CORPORATION**

Portland, OR
(503) 227-1544

Spokane, WA
(509) 838-6000



Seattle, WA
(206) 622-3376

Coeur d'Alene, ID
(208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1          THE WITNESS:  Generally it would be

2    using discretion or judgment as to when to call into the

3    office, and determining what are critical issues,

4    interpreting how the jury's responding.  Just paying

5    attention and being able to asses the situation and

6    determine if it was -- if a report into the office is

7    necessary.

8          Q.    Is -- is that a function that's going to be

9    handled by an inside representative or an -- a Field

10   Representative?

11         A.    It could be done by either.

12         Q.    Okay.  Other than determining -- when did -- you

13   know, when to call in and what to report when calling in,

14   any other ways in which a PD Rep would be expected to

15   exercise independent discretion and judgment for a trial,

16   deposition, and hearing attendance?

17                    MS.  STRANGE:   Objection.

18                    THE WITNESS:   I think I've covered it.

19   BY MR. PANTUSO:

20         Q.    Okay.  And then last we've got Face-to-face

21   Negotiations.  Can you tell me how a PD Rep would be

22   expected to exercise independent discretion and judgment in

23   face-to-face negotiations?

24         A.    Well, they're negotiating so they're having to --

25   they have complete discretion in that respect in terms of

**NAEGELI REPORTING CORPORATION**

Portland, OR                                          Seattle, WA
(503) 227-1544                                      (206) 622-3376

Spokane, WA                                        Coeur d'Alene, ID
(509) 838-6000                                      (208) 667-1163



Phone: (800) 528-3335     www.naegelireporting.com     Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

1    choosing what they are going to say and, you know, directing

2    the outcome of the settlement.

3         Q.   Does Safeco provide any sort of training to PD

4    Reps in negotiations?

5         A.   I believe we had a training module on

6    negotiations.

7         Q.   Now, the next section in Exhibit 3 there is a

8    section of Field Claim Rep Procedures?

9         A.   Um-hmm.

10                   MR. PANTUSO:   And, actually, I want you

11   to turn over to, I think, it's page 10.   The document ID

12   number is 2750.

13                   THE WITNESS:   Okay.

14                   MR. PANTUSO:   Under Reporting

15   Procedures.   And if you could just -- just read the two

16   paragraphs under Reporting Procedures, and then tell me

17   whether or not this is an accurate description of the

18   reporting procedures for Field Claims Representatives.

19                   THE WITNESS:   "Generally speaking a

20   Field Claims Representative prepares a report at the

21   conclusion of..." --

22                   MR. PANTUSO:   I'm sorry.   You don't

23   need to read it out loud.

24                   THE WITNESS:   I'm sorry.

25                   MR. PANTUSO:   Just read it and let me

NAEGELI REPORTING CORPORATION

Portland, OR                                                    Seattle, WA
(503) 227-1544                                                  (206) 622-3376

Spokane, WA                   Coeur d'Alene, ID
(509) 838-6000                                     (208) 667-1163

Phone: (800) 528-3335    www.naegelireporting.com    Fax: (503) 227-7123
Corporate Office: 2020 US Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204

CERTIFICATE


I, Marta M. Rice, do hereby certify that pursuant to the Rules of Civil Procedure, the witness named herein appeared before me at the time and place set forth in the caption herein; that at the said time and place, I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; and that the foregoing transcript pages constitute a full, true and correct record of such testimony adduced and oral proceeding had and of the whole thereof.


IN WITNESS HEREOF, I have hereunto set my hand this __26th__ day of _____August_____, __2003__.


_____
Signature

_____
Expiration Date

## NAEGELI REPORTING CORPORATION



Portland, OR
(503) 227-1544

Seattle, WA
(206) 622-3376

Spokane, WA
(509) 838-6000

Coeur d'Alene, ID
(208) 667-1163