# EXHIBIT 4

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

WILLIAM E. MIKE, individually and  :
on behalf of other similarly situated  :
individuals,  :
      Plaintiffs,  :
  :
V.  :    CASE NUMBER: 3:02CV2239(DJS)
  :
SAFECO INSURANCE COMPANY  :
OF AMERICA,  :
      Defendant.  :    JUNE 19, 2003

### AFFIDAVIT OF DAVID KABARA

STATE OF CONNECTICUT )
                       ) ss:
COUNTY OF HARTFORD  )

I, David Kabara, being duly sworn, under oath, do hereby state as follows:

1. I have been employed by Safeco Insurance Company of America ("Safeco") from 1979-1981 and 1989 to present. I currently hold the position of Field Property Specialist for the Hartford, Connecticut Service Office. During my employment with Safeco, I have worked in a number of different positions: both auto and property field rep and unit manager. From approximately 1995 until June of 2002, I held the position of Unit Manager for the Hartford, Connecticut Service Office. By reason of my experience at Safeco, I have first-hand personal knowledge of all the facts set forth below, and if called as a witness, I could and would testify to

such facts under oath. This affidavit states facts relevant to the time period from July 1998 to July 16, 2001.

    2.    In my position as Unit Manager, I was responsible for supervising the Claims Representatives who worked for Safeco in the field. My unit consisted of the Connecticut Claims Representatives who worked in the field. I supervised all of Claims Representatives in the field including William Mike. Some of the field reps reported to Mike McCullough at one time. The Claims Representatives who I supervised in the field handled different kinds of claims (auto, auto and property or just property) and performed different tasks depending on a number of factors including their backgrounds, abilities, territories, experience level, responsibilities, job functions, authority levels and skills.

    3.    The Claims Representatives who I supervised had different territories, responsibilities, skills, training, backgrounds, authority levels for settling claims and different job functions. For example, some of the Claims Representatives who I supervised worked on multi-line claims which would include auto and property claims. Others worked on auto and casualty claims. Still others worked on boats and motorcycles. Some Claims Representatives in the field had worked at drive-in locations as well as going out to the various body shops. These drive in locations involved the customer coming to the Claims Representative for an investigation of the customer's claim and possible settlement. Other Claims Representatives went out to the customer and shop locations to negotiate and settle claims.

    4.    The Claims Representatives who reported to me had different settlement authority on their claims. Settlement authority is the amount under which the Claims Representative could settle a claim without any approval. Claims Representatives could also settle claims above

2

their settlement authority with approval. This approval was generally granted based on the information and recommendation provided by the Claims Representative which was in turn based on the Claims Representative's judgment and discretion. For example, part of Mr. Mike's job duties required him to settle and negotiate claims within his settlement authority. Mr. Mike would also settle claims outside of his settlement authority with my approval. In giving that approval, I relied on Mr. Mike's input and judgment, experience and recommendation on how to resolve the claim and how much to pay to settle the claim. I would review the information and grant approval as warranted.

5. The Claims Representatives who I supervised each had a different territory in the field. These territories differed based on geography and the nature of the towns or areas contained in each field. For example, William Mike worked in the Hartford area while other Claims Representatives worked in Fairfield County and other areas throughout the state. The size and nature of the Claims Representative's territories varied. This would mean that the volume of claims may vary.

6. The Claims Representatives who reported to me had different levels of experience. This made a difference in evaluating claims. For example, a more experienced Claims Representative might run into situations he or she had handled before and might be more comfortable exercising judgment under such circumstances. More experienced Claims Representatives are also more familiar with the structure of the automobile. More experienced Claims Representatives also tend to be more skillful in negotiating with the body shop and customer. These negotiation skills are necessary to effectively perform the Claims Representative job in the field.

7. The Claims Representatives who reported to me were expected to use their independent judgment and discretion to negotiate settlements. Just about all of the settlements required negotiations. These negotiations would vary tremendously depending on a number of factors including achieving agreements on scope of work and price.

8. The Auto Claims Representatives who reported to me would handle repairable and total loss claims. They were expected to negotiate total loss claims based on the inspection of the car and value of the vehicles determined by C.C.C. a vendor program that assisted the field rep in determining the value of the vehicle.

9. The policies applicable to the claims handled by the Claims Representatives who reported to me were generally actual cash value policies. This meant that the customer was entitled to what he or she had on the car before the incident. Getting the customer what they were entitled to required judgment on the part of the Claims Representative. The Claims Representative would have to decide whether to use new or used parts or after market parts were appropriate on that claim. After market parts are parts that are made by a company other than the company which originally made the car and its parts. Customers and shops sometimes resist used or after market parts. The Claims Representative was expected to respond appropriately and utilize parts appropriately.

10. The Claims Representatives who I supervised often worked out of their homes. William Mike worked out of his home. Some of the Claims Representatives had territories close to their homes and some had territories which were farther from their homes. The traffic patterns of the different Claims Representatives also varied, sometimes impacting how they did their jobs. For example, traffic in Fairfield County would take longer to navigate than traffic in a more

4

rural area. This impacted the amount of hours each Claims Representative had to work to perform his or her job.

11. The Claims Representatives who I supervised had different levels of training. Some had ICAR certification which was a professional recognition encouraged by Safeco. Others, like William Mike, were working towards their ICAR certification. William Mike was ASE certified as an ASE master auto technician. This is another professional certification which some Claims Representatives had while others did not.

12. Each claim handled by the Claims Representatives who I supervised was different. The claims varied in complexity, nature and scope. The Claims Representative had to handle each claim separately and try to negotiate with the customer and shops while controlling labor and costs. The negotiations for each claim are generally different depending on the parties involved, the nature of the claim, and the damages sought.

13. From approximately April of 2001 through approximately December of 2001, the Connecticut Service Office used the job designation of "Territory Manager" for Claims Representatives. Mr. Mike became Territory Manager, something he mentioned in his advance preparation for performance review dated September 12, 2001 which I signed on November 11, 2001. (Ex. 1) Giving the Claims Representatives the designation of Territory Manager was a way to evaluate Claims Representatives based on their management and objectives in their particular field. Each field person was the manager of his or her own territory.

14. The Claims Representatives who I supervised at Safeco adjusted the claims they handled. They were not merely auto appraisers. I have worked in the insurance business for 24 years and understand the difference between adjusters and appraisers. An appraiser is generally

5

someone who assesses the damage on the car only. The Claims Representatives who I supervised did more than assess the damage on the car. They adjusted the claim with the insured and the body shop.

June 19, 2003

6/29/03

_____
Dave Kabara

Subscribed and Sworn to
before me on this 19 day of
June, 2003.

_____
Margaret J. Strago
Notary Public
Commissioner Superior Court