# EXHIBIT 5

Mike vs. Safeco Ins.

5/21/2003                                                    Scott Ables

Page 1

1                UNITED STATES DISTRICT COURT

2                  DISTRICT OF CONNECTICUT

3

4    * * * * * * * * * * * * * * * *

     WILLIAM E. MIKE, individually

5    and on behalf of other similarly

     situated individuals,

6                   Plaintiffs,

                                    Civil Action No.

7         -vs-                      3:02CV2239 (DJS)

     SAFECO INSURANCE COMPANY

8    OF AMERICA,

                    Defendant.

9    * * * * * * * * * * * * * * * *

10

11

12         Telephonic Deposition of SCOTT ABLES, taken

13    before Bethany A. Carrier, Court Reporter and Notary

14    Public within and for the State of Connecticut,

15    pursuant to Notice and the Federal Rules of Civil

16    Procedure, at the offices of Hayber & Pantuso, LLC,

17    221 Main Street, Hartford, Connecticut, taken on

18    May 21, 2003, commencing at 2:08 p.m.

19

20

21              Bethany A. Carrier, LSR 071

22            Brandon Smith Reporting Service

23                 44 Capitol Avenue

24            Hartford, Connecticut  06106

25                  (860) 549-1850

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                    Scott Ables

Page 27

1    expected a claims representative to be able to do

2    all of these where they had skills and training.

3        Q    Now, under number 7, the first item said

4    under duties and responsibilities, it begins by

5    saying, "Handles inside and/or outside claims."  Can

6    you please define for me what is meant by inside

7    claims and outside claims?

8        A    Well, inside claims would be those parts of

9    a claim that could be done by telephone.  It could

10   be coverage determination.  It could be some

11   investigation where face-to-face is not required.

12   It could be evaluation of the liability, medical,

13   negotiation with claimants.  It could be -- and this

14   description covers all product lines.  It could be

15   contents evaluation on a fire loss.  It could be --

16   those things can be done largely inside.  And

17   settlement techniques, resolution of the losses,

18   structured settlements, et cetera, those can be done

19   inside.

20            Outside requires skills to do damage

21   assessment.  And again, this is a broad description.

22   So a claims representative might do damage

23   assessment on automobiles, they may pay the losses,

24   they determine coverage.  They may do scene

25   investigations to help determine liability.  They

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                          Scott Ables

Page 28

1    work to detect fraud and have input on that. So the

2    outside part -- when you take a claims file, you can

3    do some things from inside, you can do some things

4    from outside.

5           An inside person can't really write an

6    estimate on a car. So those all were available.

7    But we believe that a person who had the skills,

8    some moved inside, some moved outside, they could do

9    either, depending on their skill level and depending

10   upon the resource needs of the region.

11       Q    Okay. Now, you just said that an inside

12   person probably would not have the skills necessary

13   to write an appraisal on a car.

14           MR. PFISTER: Objection.

15   BY MR. PANTUSO:

16       Q    Or something to that extent

17           MR. PFISTER: Mischaracterizes

18   the prior testimony.

19   BY MR. PANTUSO:

20       Q    Understood. But something to that extent.

21       A    If they had the skills, they could work

22   inside or outside. In general, that would -- if

23   they were an inside claims representative, in

24   general that would not be their role. However, in

25   property, they may work inside and outside and

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                    Scott Ables

Page 69

1       A    I don't know what Safeco -- we're a big

2    corporation, but -- and I was not aware of the

3    specific case, but I was aware that there had been

4    some rulings for appraisers previously.  I did not

5    know the year or the case number or anything like

6    that.

7    BY MR. PANTUSO:

8       Q    Okay.  When you say you were aware that

9    there had been some rulings regarding appraisers

10   previous to this, specifically what were you aware

11   of?

12      A    That they had been ruled nonexempt.  That

13   position had been ruled nonexempt.

14      Q    And when did you acquire that knowledge?

15      A    I don't remember specifically.  I came into

16   home office in 1990 -- in August of 1990.  So it was

17   after that date.  But I don't know the specific

18   time.

19      Q    Okay.  So can you try to break it down for

20   me a little bit?  Would it have been sometime within

21   your first three years in home office?

22      A    I really can't.  I'm sorry, I really can't

23   recall.

24      Q    Would it have been prior to January of

25   2001?

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                       Scott Ables

Page 70

```
 1        A      Yes.

 2        Q      And understand here I'm just trying to

 3   narrow it down a little bit.

 4        A      I mean, I can't -- I don't want to guess,

 5   but I would say sometime after I came in in 1990.   I

 6   don't know, it could be in the mid years, '94, '5,

 7   '6.   I don't know.   Somewhere in there I learned.   I

 8   did not see a case, I did not review a case, but I

 9   did learn about this decision I think from an

10   industry meeting.   But I did not review it or see

11   it.   We didn't have appraisers on any broad basis,

12   and so -- but I was aware there had been a ruling.

13        Q      When you became aware of this ruling, did

14   you take any steps to determine whether or not there

15   might be any employees of Safeco who would be

16   covered by that ruling?

17        A      We felt that our staff did more than

18   appraiser work.   We did clarify in our title of

19   claims representative -- move to claim

20   representatives, making sure all our staff had that

21   broad title, because we believed that our staff were

22   not just appraisers, they did other things than just

23   appraisals.   They also paid claims, exercised

24   various judgments, et cetera.

25               So we didn't feel it was relevant to us.
```

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                     Scott Ables

Page 71

1    But we did incorporate any appraisers that we may

2    have hired from other companies and make sure they

3    had the title of claims representative.

4         Q    Okay.  Let me -- I'm going to back up here

5    a little bit.  Now, prior to the time that you

6    learned of this decision that we're discussing, were

7    there employees of Safeco who held the job title or

8    job position of automobile appraisers?

9         A    I believe we had a very limited number.

10   And I can't tell you how many, but a very limited

11   number.  Maybe two or three in a region that we had

12   gone out to hire highly specialized skills, and I

13   believe we did give them the title appraiser.  But

14   we later integrated that into the claims

15   representative title.

16        Q    Okay.  Now, when you learned of this

17   decision, you said that one of the things that was

18   done is that you did apply this broad title of

19   claims representative to all employees who would

20   perform such appraisal duties; is that correct?

21             MR. PFISTER:  I'm going to object as

22   vague and ambiguous when you talk about appraiser

23   duties.  He said -- he's testified that he didn't

24   read the decision and I -- you'd better clarify what

25   you mean by that.

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                    Scott Ables

Page 72

1                   MR. PANTUSO:  I'll withdraw that

2      question and I'll try to tighten it up a little

3      bit.

4      BY MR. PANTUSO:

5          Q    Now, when you learned of this decision,

6      again understanding that you did not read the

7      decision, but you did become aware of it.

8          A    Okay.

9          Q    At that point, did Safeco take any steps to

10     determine whether or not there were any employees

11     who might be covered under that decision?

12                  MR. PFISTER:  I'm going to object as

13     asked and answered, but he can respond again.

14         A    Can you clarify a little better?  Are you

15     saying did we go out and review the specific duties

16     of these individuals or interview them or talk to

17     them?  I'm not quite clear on the question.

18     BY MR. PANTUSO:

19         Q    That's what I'm trying to find out.  Did

20     you take any steps such as those?

21         A    We had hired some individuals who had been

22     appraisers at other carriers, insurance carriers, to

23     do damage assessment for us.  We had very few,

24     because our general policy was to hire trainees and

25     train them.  We had very few appraisers.  But we

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003

Scott Ables

Page 73

1  also believed that they should fit the description

2  within the claims representative role.  So we didn't

3  do a lot of research on that.  We believed they were

4  exempt.  We didn't believe they fit the appraiser

5  title.

6          And when I say "appraiser," in the industry

7  generally appraisers don't pay damages.  They write

8  an estimate and send it to the company or send it in

9  to an inside person.  But they don't pay damages and

10  they don't become involved in casualty

11  investigations and fraud investigations and things

12  like that.  And our appraisal staff did other things

13  than just write estimates.  So we didn't believe

14  they were in that category.

15          But to clarify that, we integrated their

16  role into the claims representative role when we

17  rewrote that role.

18      Q    Okay.  Now, I believe you stated earlier

19  that people who hold the position of claims

20  representative may specialize within that broad job

21  description; is that correct?

22      A    Correct.

23      Q    Okay.  And some of these people -- these

24  people may specialize in the area of damage

25  assessment; is that correct?

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                          Scott Ables

Page 74

1        A    They may specialize in the area of

2    automobile, which includes damage assessment.  They

3    also have responsibility for fraud detection, for

4    coverage determination, for settlement of the loss.

5    But yes, our specialists -- not specialists, but our

6    claims representatives who may specialize,

7    specialize in automobile or property or commercial

8    or they may work in -- or otherwise they're

9    multi-line.

10       Q    Now, when you became aware of this court

11   decision regarding automobile damage appraisers --

12              MR. PFISTER:  I'm not sure he

13   testified that and I'm going to object as lacking

14   foundation and mischaracterizing the testimony.  I'm

15   not sure he knew the specifics of that case.

16              MR. PANTUSO:  Well --

17              MR. PFISTER:  He said auto appraisers

18   as opposed to appraisers.  I don't know that you

19   previously indicated that.

20              MR. PANTUSO:  I believe that I did,

21   but let me just clarify.

22   BY MR. PANTUSO:

23       Q    This decision that we've been discussing

24   the past few minutes, is this a decision that you

25   became aware of that was relating specifically to

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b

Mike vs. Safeco Ins.

5/21/2003                                                    Scott Ables

Page 111

1                    STATE OF CONNECTICUT

2        I, Bethany A. Carrier, LSR 071, a Notary Public,

3    duly commissioned and qualified in and for the State

4    of Connecticut, do hereby certify that pursuant to

5    Notice, there came before me on the 21st day of May,

6    2003, the following-named person, to wit:

7    SCOTT ABLES, who was by me duly sworn to testify to

8    the truth and nothing but the truth; that he was

9    thereupon carefully examined upon his oath and his

10   examination reduced to writing under my supervision;

11   that this deposition is a true record of the

12   testimony given by the witness.

13        I further certify that I am neither attorney nor

14   counsel for nor related to nor employed by any of

15   the parties to the action in which this deposition

16   is taken, and further that I am not a relative or

17   employee of any attorney or counsel employed by the

18   parties hereto, or financially interested in this

19   action.

20        IN WITNESS THEREOF, I have hereunto set my hand

     this _____ day of _____, 2003.

21

22   _____

                      Bethany A. Carrier

23                    Notary Public

24   My Commission Expires:

     October 31, 2003

25

Brandon Smith Reporting Service

e73be605-9556-47d8-928f-8ae52bb9024b