# EXHIBIT 10

KATHY MCLAUGHLIN, GARY E. PIERCE, CAROLYN YACKEY, CAROLYN NGUYEN and MARK BARRET, individually and on behalf of all others similarly situated, Plaintiffs v. NATIONWIDE MUTUAL INSURANCE COMAPANY, ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, and JOHN DOES 1-50, Defendants.

Civil No. 02-6205-TC

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

2004 U.S. Dist. LEXIS 21841

August 18, 2004, Decided
July 31, 2002, Filed

DISPOSITION: Defendant's motion for summary judgment granted in part. Defendants' motions to strike denied as moot; Plaintiffs' motion for order to approve sending notice of "Opt in" opportunity to all of those similarly situated denied without prejudice.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff employees sued defendant employers, asserting claims for overtime under the Fair Labor Standards Act (FLSA), for overtime under state laws, and for additional pension plan contributions under ERISA. The employees moved for an order to approve sending an opt-in notice. The employers moved to strike and for summary judgment.

OVERVIEW: The employees were casualty claims representatives (CCRs), material damage claims representatives (MDCRs), or multiple line claim representatives (MLCRs) for the employers, insurance companies. The CCRs adjusted insurance claims involving bodily injuries and used a computer software program on some casualty claims. The court determined that the employers were entitled to summary judgment as to the FLSA and ERISA claims regarding the CCRs because the CCRs were exempt administrative employees under the FLSA and could not invoke *29 U.S.C.S. § 207*(a)(1) in a claim for overtime pay. The CCRs met the administrative exemption because, inter alia, (1) the primary duties of the employees consisted of work that was directly related to the employers' management policies and business operations, in that the employees were responsible to carry out or execute the employers' claim adjusting policies on behalf of the employers and their policy holders, and (2) CCRs exercised considerable independent judgment and discretion on matters of substantial importance. The CCRs' use of computer software did not affect their status as exempt employees.

OUTCOME: The court allowed the employers' summary judgment motion as to the FLSA and ERISA claims regarding the CCRs, but the court provided the parties additional time for supplemental briefing on the claims regarding the MDCRs and MLCRs. The court denied as moot the employers' motions to strike. The court denied without prejudice the employees' motion for an order to approve sending opt-in notice.

CORE TERMS: independent judgment, regulation, exemption, exempt, summary judgment, recommendation, dichotomy, adjusters, duty, exercise of discretion, general business, reply, settlement, claimant, overtime, salary, genuine issue, nonmanual, coverage, settlement authority, set forth, customers, manager, overtime pay, moving party, clarify, opinion letter, undisputed facts, guidelines, adjust

LexisNexis(R) Headnotes

COUNSEL: [*1] For Kathy McLaughlin, Plaintiff: Daniel J. Gatti, Gatti Gatti Maier Kineger Sayer & Assoc., Salem, OR. Lawrence Walner, Lawrence Walner & Associates, Chicago, IL.

For Carolyn Yackey, individually and on behalf of all others similarly situated Plaintiff: Lawrence Walner, Lawrence Walner & Associates, Chicago, IL. Daniel J. Gatti, Gatti Gatti Maier Kineger Sayer & Assoc., Salem, OR.

For Gary E. Pierce, individually and on behalf of all others similarly situated Plaintiff: Lawrence Walner, Lawrence Walner & Associates, Chicago, IL. Daniel J. Gatti, Gatti Gatti Maier Kineger Sayer & Assoc., Salem, OR.

For Mark Barrett, individually and on behalf of all others similarly situated, Plaintiff: Daniel J. Gatti, Gatti Gatti Maier Kineger Sayer & Assoc., Salem, OR.

For Carolyn Nguyen, individually and on behalf of all others similarly situated Plaintiff: Daniel J. Gatti, Gatti Gatti Maier Kineger Sayer & Assoc., Salem, OR.

For Nationwide Mutual Insurance Company, Defendant: Christopher A. Parlo, Morgan Lewis & Bockius, LLP New York, NY. Michael J. Puma, Morgan Lewis & Bockius LLP, New York, NY. Nicole A.J. Gustafson, Morgan Lewis & Bockius, LLP, Los Angeles, CA. Thomas[*2] v. Dulcich, Schwabe Williamson & Wyatt, PC, Portland, OR.

For Allied Property and Casualty Insurance Company, Defendant: Christopher A. Parlo, Morgan Lewis & Bockius, LLP, New York, NY. Michael J. Puma, Morgan Lewis & Bockius LLP, New York, NY. Nicole A.J. Gustafson, Morgan Lewis & Bockius, LLP. Thomas v. Dulcich, Schwabe Williamson & Wyatt, PC, Portland, OR.

For Allied Group Inc., Defendant: Christopher A. Parlo, Morgan Lewis & Bockius, LLP New York, NY. Michael J. Puma, Morgan Lewis & Bockius LLP, New York, NY. Nicole A.J. Gustafson, Morgan Lewis & Bockius, LLP, Los Angeles, CA. Thomas v. Dulcich, Portland, Schwabe Williamson & Wyatt, PC, Portland, OR.

JUDGES: THOMAS M. COFFIN, United States Magistrate Judge.

OPINIONBY: THOMAS M. COFFIN

OPINION: ORDER

COFFIN, Magistrate Judge:

Each of the plaintiffs in this action is a claims representative (CR) for defendant insurance companies. They assert claims for overtime under the *Fair Labor Standards Act (FLSA)*, for overtime under state laws, and for additional pension plan contributions under ERISA.

Presently before the court are plaintiffs' motion (# 47) for order to approve sending notice of "Opt in" opportunity to all those similarly[*3] situated and defendants' motions to strike (# 84) and for summary judgment (# 33 and # 64). Defendants move for summary judgment on the ground that the undisputed facts, established by plaintiff's own documents and deposition testimony, demonstrate that plaintiffs are properly classified by defendants as "exempt" under the "administrative" exemption of the FLSA, and thus, plaintiffs are not entitled to overtime payments or additional pension plan contributions.

STANDARDS

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Fed R. Civ. P. 56(c)*. The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. *Rule 56(c)* mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish[*4] the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id. at 323*. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986)*; *Taylor v. List, 880 F.2d 1040 (9th Cir. 1989)*.

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976)*. The inferences drawn from the underlying facts[*5] must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989)*. Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981)*.

LEGAL LANDSCAPE

Administrative Exemption

1. The FLSA

The FLSA ordinarily requires employers to pay their employees time and one-half for work exceeding forty hours per week. *29 U.S.C. § 207(a)(1)*. The FLSA

provides certain statutory exemptions from the overtime pay requirements. See *29 U.S.C. § 213(a)(1)*. In this action, only the exemption for persons "employed in a bona fide * * * administrative * * * capacity" is at issue. *29 U.S.C. § 213(a)(1)*.

The employer bears the burden of establishing that an employee fits within an exemption. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) (quoting *Donovan v Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 41 L. Ed. 2d 1, 94 S. Ct. 2223 (1974) [*6] Because the FLSA is to be liberally construed to apply to the furthest reaches consistent with Congressional direction, * * * FLSA exemptions are to be narrowly construed against * * * employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit.'" *Bothell*, 299 F.3d at 1124-25 (quoting *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)); see also *Alvarez v. IBP, Inc.*, 339 F.3d 894, 904 (9th Cir. 2003); *Webster v. Public School Employees of Washington, Inc.*, 247 F.3d 910, 914 (9th Cir. 2001).

2. The Regulations

The FLSA delegates to the Secretary of Labor broad authority to "define [] and delimit []" the scope of the administrative exemption. *29 U.S.C. § 213(a)(1)*. The Department of Labor ("DOL") has issued regulations interpreting the exemption for administrative employees, to which I must give due deference. *Auer v. Robbins*, 519 U.S. 452, 461, 137 L. Ed. 2d 79, 117 S. Ct. 905 (1997).

The DOL regulations outline both "long" and "short" tests for administrative employee status. See *29 C.F.R. § 541.2(a)-(e)* [*7] ("long test") n1; *29 C.F.R. §§ 541.2(e)(2) and 541.214* ("short test"); see also *Martin v. Cooper*, 940 F.2d 896, 901 and 901 n.4 (3d Cir. 1991). In Martin, the court explained that the short test applies to employees who are compensated at a rate of not less than $250 per week, exclusive of board, lodging, or other facilities. In contrast to the long test, which requires that an employee "customarily and regularly" exercise discretion and independent judgment, the short test requires only that an employee's duties include work involving the use of discretion and independent judgment. *Martin*, 940 F.2d at 901 n.4 (quoting *Donovan v. Tama Meat Packing Corp.*, 817 F.2d 54, 55 (8th Cir. 1987) (emphasis added; internal quotations omitted)); accord, *In re Farmers Insurance Claim Representatives' Overtime Pay Litigation*, 300 F. Supp. 2d 1020, 1031 (D. Or. 2003); *Jastremski v Safeco Ins. Cos.*, 243 F. Supp. 2d 743, FN 4 at 755-756 (N.D. Oh 2003); *O'Dell v. Alaska Pipeline Service Co.*, 856 F.2d 1452, 1454 (9th Cir 1988) [*8]

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The "long test" is a four-pronged test that in essence asks, for employees earning not less that $155 per week, whether the employee (1) performs office or nonmanual work directly related to management policies or general business operations of the employer; (2) customarily and regularly exercises discretion and independent judgment; (3) regularly assists a proprietor or executive, or performs specialized work or executes special assignments under only general supervision; and (4) does not devote more than 20 percent of the workweek to activities other than those described above See *29 C.F.R. § 541.2(a)-(e)*.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Under the short test, which, as explained below, applies in this case, an "employee employed in a bona fide * * * administrative * * * capacity" is any employee:

(a) who is compensated on a "salary basis" at a rate of at least $250 per week; and

(b) whose "primary duty consists of * * * the performance of office or nonmanual work directly related to management[*9] policies or general business operations of his employer or his employer's customers;" and

(c) whose duties include work "requiring the exercise of discretion and independent judgment."

*Bothell*, 299 F.3d at 1125 (quoting *29 C.F.R. § 541.2*). These criteria are "absolute"; defendants must prove all of these requirements before this court may hold that any or all CRs are exempt from coverage under the FLSA. See *Bothell*, 299 F.3d at 1125 (citation omitted); see also *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1069 (9th Cir. 1990).

In Webster, supra, the court explained that the short test has two parts. The first, known as the "salary basis test," is met by proof that defendants pay the CRs at least

$250 per week on a salary basis. *247 F.3d at 914.* Plaintiffs do not dispute that all CRs are compensated at a rate far in excess of $250 per week and that plaintiffs are paid a salary. As such, the short test applies and the first requirement of the short test, the "salary basis test," is met.

The second and more analytically difficult part of the short[*10] test is known as the "duties test." *Webster, 247 F.3d at 914.* The parties do not dispute that all CRs perform primarily "office or nonmanual work." See *29 C.F.R. § 541.2(a)(1)*; see also *29 C.F.R. § 541.203* (nonmanual work defined). The parties do dispute the two major prongs of the "duties test": (1) whether the CRs' primary duties consist of work of substantial importance "directly related to management policies or general business operations" of defendants or defendants' customers; and (2) whether the CRs' duties include work "requiring the exercise of discretion and independent judgment." *29 C.F.R. § 541.2(a)(1) and (b).*

a. "Directly Related To"

A key requirement for the administrative exemption is that an employee's primary work be "directly related to management policies or general business operations of his employer or his employer's customers." *29 C.F.R. § 541.2(a)(1)*. The DOL regulations explain that the "directly related" phrase

describes those types of activities relating to the administrative operations of a business as distinguished from "production" [*11] * * *. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a). With respect to "work of substantial importance," the regulations further explain:

As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those whose work affects policy or whose responsibility is to execute or carry it out. * * *.

(1) It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. * * *

29 C.F.R. § 541.205(c) and (c)(1)(emphasis added).

The so-called "administration/production dichotomy" arises from the "production" [*12] language of section 541.205(a). In In re Farmers, supra, District Judge Robert Jones addressed the dichotomy as follows:

Because the regulations suggest a distinction between the administration of a business on the one hand, and the "production" end of a business on the other, courts have often strained to fit the operations of modern-day post-industrial service-oriented businesses into an analytical framework formulated in the industrial climate of the late 1940s. As the Ninth Circuit noted in Bothell, however, "the administration/production dichotomy is useful only to the extent that it helps clarify the phrase 'work directly related to the management policies or general business operations,'" and cautioned that the distinction should "only be used as a tool towards answering the ultimate question, * * * not as an end in itself." *299 F.3d at 1126, 1127.* As Bothell further explained:

Indeed, the regulation from which the dichotomy derives does not stand alone. Rather, the administrative exemption is explicated in a series of interpretive regulations, of which 29 C.F.R. § 541.205(a) is only one, attempting[*13] to clarify the elusive meaning of the term "administration."

The other pertinent cases from our sister circuits similarly regard the administration/production dichotomy as but one piece of the larger inquiry, recognizing that a court must "construe the statutes and applicable regulations as a whole. * * * Indeed, some cases analyze the primary duty test without referencing the § 541.205(a) dichotomy at all. This approach is sometimes appropriate because, as we have said, the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis. Only when work falls "squarely on the production' side of the line," has the administration/production dichotomy been determinative.

*Bothell, 299 F.3d at 1126-27* (citations and footnotes omitted); but see *Reich v. State of New York, 3 F.3d 581, 588 (2d Cir. 1993)* (disagreeing that "the production/administrative dichotomy has limited usefulness outside the manufacturing context").

*In re Farmers, 300 F. Supp. 2d at 1032-1033.*

Judge Jones expressly declined to go through the analysis of the administration/production dichotomy in the claims adjusting context[*14] because claims representatives "are service providers, not production

workers. *300 F. Supp 2d at 1033.* The court in *Robinson-Smith v. Gov't Emples. Ins. Co., 323 F. Supp. 2d 12, 2004 WL 1497883, FN7 (D.D.C. 2004)* concurred in this approach and further noted that "it is clear from the revised language of the August 2004 Regulations n2 that the Department of Labor has moved away from this administrative/production dichotomy" in the context of service industries. See August 2004 Regs at 22,262-63.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 On April 23, 2004, revisions to the regulations were approved as a final rule. Although these new rules are not effective until August 23, 2004, they are instructive with respect to the Department of Labor's interpretation of the requirements of the administrative exemption. See Defining and Delimiting the exemptions for *Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed Reg 22,122 (April 23, 2004)* (to be codified at 29 C.F.R. pt 541). The general criteria for employees employed in a bonafide administrative capacity are essentially the same under the August 2004 regulations as under the current regulations. See *id. at 22,262.* Robinson Smith, supra at 5. While many of the new regulations can provide some additional support for this opinion, they are not needed for such support and will not be used. The outcome of the present motions would be the same under either the new regulations or the current regulations. Such outcome rests largely on the particular facts of this case.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*15]

Similar to Judge Jones and the court in *Robinson-Smith*, this court declines plaintiff's invitation to analyze the present situation under an outdated line of reasoning. As amply shown by defendants, the CRs in this case are service providers and not production workers. Defendants are in the business of designing and creating insurance policies and selling them to customers. Insurance policies are the product created and generate defendant's revenues. Defendants receive claims and do claim processing on a a fraction of their policies and such is a cost of doing business and not a product.

In Bothell, the court explained that the "directly related" requirement is met "if the employee engages in 'running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs." *Bothell, 299 F.3d at 1125* (quoting *Bratt, 912 F.2d at 1070*). The DOL has explained, however, that the "directly related" requirement is not limited to those whose work affects policy or who bear responsibility for executing policy or carrying it out. Instead

the phrase also includes a wide variety[*16] of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business,

29 C.F.R. § 541.205(c) (emphasis added).

29 C.F.R. § 541.205(c)(5) states that "the test of 'directly related to management policies or general business operations' is also met by many persons employed as advisory specialists and consultants of various kinds, * * * claim agents and adjusters, * * *." 29 C.F.R. § 541.205(c)(5) (emphasis added).

However, it should be emphasized that this court's decision on the applicability of the exemption does not rest on job titles or generalities. It rests on analysis of what the CRs in this action actually do as properly shown by the parties in the record.

b. "Discretion and Independent Judgment"

The second major requirement for exempt administrative status is that the employee's primary duties include "work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.205(e)(2)[*17]. That requirement is satisfied if the employee "has the ability to compare, evaluate, and choose from possible courses of conduct. The requirement 'implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.'" *Bothell, 299 F.3d at 1129*(quoting 29 C.F.R. § 541.207

Acknowledging that "in one sense almost every employee is required to use some discretion and independent judgment," the DOL regulations clarify that "the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1). Further, the regulations caution against

misapplication and misunderstanding of the term "discretion and independent judgment, noting "(1) confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and (2) misapplication of the term to employees making decisions relating to matters of little consequence." 29 C.F.R. § 541.207(b)[*18]. The regulations give the following example of the distinction between the use of skills and the exercise of discretion and independent judgment:

An employee who merely applies his knowledge in following prescribed procedures or determining which procedures to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of § 541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

29 C.F.R. § 541.207(c)(1)

DOL also has clarified that "discretion and independent judgment" does not necessarily imply that an employee's decisions must "have a finality that goes with unlimited authority and a complete absence of review":

The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's[*19] decision may be subject to review and that upon occasion the decisions are revised does not mean that the employee is not exercising discretion and independent judgment * * *.

29 C.F.R. § 541.207(e)(1).

3. November 2002 DOL Opinion Letter

On November 19, 2002, the DOL issued an opinion letter in response to an inquiry by the National Association of Mutual Insurance Companies stating, in essence, that insurance claims adjusters perform work that is administrative in nature. The 2002 opinion letter is consistent with earlier DOL opinion letters on similar topics. Opinions of the DOL, like DOL regulations, are entitled to persuasive value if the position of DOL is thoroughly considered and well reasoned. See, e.g., *Webster, supra*, 247 F.3d at 914 n.2(citing *Auer, supra*, 519 U.S. at 461); see also *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944).

The 2002 DOL opinion letter is thorough, well reasoned, and, in this court's view, an accurate interpretation of the regulations at issue in this action; and as such, it is entitled to deference. The opinion letter is based "exclusively [*20]on the facts and circumstances" presented to the DOL, which among other things, were:

As to all claims within their established authority, claims adjusters have complete discretion and independent judgment;

Claims adjusters make all relevant decisions regarding coverage and liability;

Claims adjusters negotiate with full authority to attempt to achieve a settlement;

Although some of the adjusters have quite limited levels of authority, as low as $3,000, even those adjusters make recommendations to their supervisors on the appropriate value of much larger claims, which are frequently accepted;

After the supervisor approves a particular settlement on a larger claim, the adjusters proceed with the same level of independence as they do on claims within their authority level and determine the most appropriate method for resolving the claim within that approved amount;

If negotiations fail on such large claims, the adjusters continue to be responsible for the claim;

Claims adjusters work with counsel to represent the company in any litigation that ensues.

4. Case Law

Defendants have cited many, many cases that have considered the status of insurance claims representatives. [*21] Such cases have analyzed the CRs duties under the Department of Labor regulations and have held that the CRs are exempt under the administrative exemption to the FLSA and therefore are not entitled to overtime pay. Two of the more recent examples are *Palacio v. Progressive Insurance Company*, 244 F. Supp.2d 1040 (CD Cal 2002), and *Jastremski v. Safeco Insurance Companies*, 243 F. Supp.2d at 753 (ND Oh 2003). Both were decided at the summary judgment stage. In Palacio, a CR was found exempt where she assessed liability, weighed evidence, determined credibility, reviewed insurance policies, negotiated with attorneys and claimants, and made, recommendations to management

based on skills, knowledge and training acquired over the course of several years.

In Jastremski, a CR was found exempt where he was assigned an insurance claim, contacted the claimant, reviewed the policy to determine if the claimed loss was covered, determined the dollar value for the claim, and negotiated a settlement.

Among the many other cases, a CR was found to be an exempt employee in *Munizza v. State Farm Mutual Automobile Insurance Co., 1995 U.S. Dist. LEXIS 22362 (W.D. Wash. 1995)* [*22] In In re Farmers, supra, Judge Jones found after a court trial that CRs who handled liability (bodily and personal injury and death) claims were exempt as were "higher level property" CRs.

A couple of cases have found certain types of insurance claims adjusters not exempt and therefore potentially entitled to overtime pay. Judge Jones in In re Farmers found that "auto physical damage" CRs and "lower level property" CRs were not exempt in the particular facts before him. Judge Jones expressly stated that general adjusters and commercial lines CRs were not included in his opinion. An out of district case too recent to be cited by the parties found that the CRs at issue had nearly identical factual circumstances as the "auto physical damage" CRs in In re Farmers and found them not exempt. *Robinson-Smith v. GEICO, 323 F. Supp. 2d 12, 2004 WL 1497883, FN7 (D.D.C. 2004).* n3

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n3

In *Bell v. Farmers Ins. Exch., 87 Cal.App.4th 805, 105 Cal.Rptr. 59 (2001)*, a California appeals court affirmed a trial court decision that rejected defendant's administrative exemption defense under California law. The Bell court applied the administrative/production dichotomy to the record before it, ultimately concluding that the particular claims representatives at issue were restricted to routine and unimportant work or, on matters of greater importance, acted as mere conduits of information to supervisors. *87 Cal.App.4th at 828.*

The trial court decided Bell on summary judgment, on a record, which, as described by the court of appeal, "confirmed the accuracy of defendant's own description of the claim representatives' responsibilities as being restricted to 'the routine and unimportant.'" *87 Cal.App.4th at 828.* Similar to Judge Jones's situation, the record before me permits no such generally-applicable description and although Bell discusses the FLSA, it was decided under California, not federal, law. Moreover, Bell's focus on the administrative/production dichotomy appears to have skewed the court's overall view of defendant's business activities and the CRs' place in those activities. I thus find *Bell* to be of little guidance on the factual record and legal issues before me.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*23]

FACTUAL LANDSCAPE OF THIS CASE

Defendants' motions for summary judgment specifically address the different categories of CRs employed by defendants.

Casualty Claims Representatives

Casualty Claims Representatives (CCRs) adjust insurance claims involving bodily injuries. Plaintiffs Mclaughlin, Nguyen and Yackey were CCRs.

Plaintiffs admit n4 that CCRs:

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n4 In conjunction with the making of such admissions, plaintiffs contend that the admissions do not provide support for the exemption as plaintiffs actions were performed pursuant to company policy and procedures and were subject to management review. The legal effect of such contention is addressed subsequently.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

were allowed to negotiate, settle and pay claims within their settlement authority;

2004 U.S. Dist. LEXIS 21841, *

would collect information pursuant to company guidelines and would review the policy to make sure there was coverage, would note what the particular state law was in regards to comparative or contributory fault, and would offer their opinion as to liability; [*24]

would make recommendations on settlements in the matters that exceeded their authority and such recommendations were frequently approved;

would proceed with the same level of independence after approval of a settlement on larger claims that they did on claims within their authority level and determine the most appropriate method for resolving the claim within that approved amount;

would continue to have responsibility over a claims file if negotiations on the larger claims failed; and

would keep in touch with attorneys on claims that went to litigation.

See, e.g., pp. 6-7 and p. 10 of Reply (# 103).

In addition, plaintiffs admit that CCRs: negotiate over 100 claims a year as the representative of defendants; set reserves and recommend adjustments to the level of reserves above their authority with such recommendations generally being given deference by management; assess defendant's subrogation rights, make credibility judgments; and make recommendations as to the use of investigators and expert witnesses. Id.

Plaintiffs do not dispute that CCRs have a preapproved level of settlement authority, generally over $3,000 per claim and pay out more than $1,000,000 [*25]a year in claims.

In determining a settlement range, several things are evaluated. One tool CCRs use is a computer software program called Colossus. Colossus suggests a range of damages after the CCR inputs certain information. Where a CCR disagrees with the range of damages suggested by Colossus, the CCR can go outside the range by making a recommendation to, and obtaining approval from, management. For example, a CCR may evaluate a claimant's medical records, potential loss of future earnings and other relevant factors, and determine that the range suggested by Colossus is either inadequate or excessive for the settlement of the particular claim. In those instances, CCRs gather the facts, discuss the situation with their manager, and recommend a number appropriate to the claim. Managers typically defer to such recommendations. CCRs can also settle a claim that is below a range suggested by Colossus.

It should also be noted that Colossus is not used on all casualty claims. for example, Colossus is not used for :1) injury claims with a total settlement value of $1,000 and under; 2) severe head injury or brain damage; 3)severe spinal cord injury, paraplegia or quadriplegia; 4) death[*26] or survivor claims; 5)burns or other cosmetic disfigurements; 6)dental trauma; 7) claims that contain no general damages; and 8) poisoning. Colossus is also not available as a tool to help CCRs set the range for damages such as loss of consortium and inconvenience. Finally, Colossus is also not involved in any way in a determination of liability. n5

------------------Footnotes------------------

n5 Prior to April, 2001 CCRs did not have Colossus. Thus, Plaintiffs Nguyen and Yackey never used Colossus themselves to establish a damage range on one of their claims.

------------------End Footnotes------------------

It should also be noted here that plaintiffs repeatedly attempted to create triable issues of fact in their legal arguments without meeting their shifted summary judgment burden by doing so through the production of probative evidence. On many occasions plaintiffs have provided no citations to the record for their assertions n6, in other instances their citations to the record simply do not support their assertions n7, and in still others their citations to the record support the exact opposite of[*27] the contention plaintiffs originally set forth in the briefs n8. Plaintiffs have often failed to provide general cross references between their various submissions, making it extremely difficult to track whether evidentiary support exists for their conclusory assertions

------------------Footnotes------------------

n6 See, e.g., pp. 12 and 13 of Plaintiff's Reply (# 133).

n7 See, e.g., lines 9-12 of p. 14 of Plaintiff's Reply(# 133) compared to citation of Yackey Dep. p. 150:20-22 (P. 46 of Exh. A to Reply (# 134)).

n8 See, e.g., lines 11-13 of p. 5 of Reply (# 75) compared to citation of Ireland Dep. p. 44:25 (P 25 Of Exh. A to Reply (# 134)).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n9 See In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation, MDL Docket No. 33-1439.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Plaintiff is required to set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ P. 56(e)*. In asking for supplemental briefing on how new matters affected this action, this court specifically ordered the following with an added bolded emphasis:

Defendant shall make a filing within 30 days addressing plaintiffs' letter and addendum[*28] of November 4, 2003. Defendant shall also address the viability of its motion for summary judgment in light of Judge Jones' recent Findings of Fact and Conclusions of Law n9 which holds that certain categories of Farmers Insurance claims representatives are nonexempt from overtime requirements.

Factual similarities and differences, if any, between the Farmers Insurance matter and the present matter should be discussed. A position on the application of the law in the Farmers matter shall also be asserted.

Plaintiffs shall have 30 days thereafter to respond to the content of defendant's filing. Plaintiffs shall also address the categories of claims representatives held in the Farmers Insurance matter to be exempt from overtime requirements. Factual similarities and differences, if any, between the Farmers Insurance matter and the present matter should be discussed. A position on the application of the law in the Farmers matter shall also be asserted. Defendant shall have 30 days thereafter to reply to plaintiffs' filing.

All references made by the parties to the factual records should not be conclusory, but shall be accompanied by specific citation, including page numbers and docket [*29] numbers. In most situations, the supporting quotations shall also be set forth.

Order(# 118).

Plaintiffs filed a 32 page brief n10 in response, but their efforts in this regard did not noticeably improve. It is not this court's duty to search the record for evidence on which to deny summary judgment. *Forsberg v. Pac. N.W. Bell Tel Co., 840 F.2d 1409, 1417-1418 (9th Cir. 1988); Waldridge v American Hoechst Corp., 24 F 3d 918, 920 (7th Cir. 1994)*.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n10 "This was double the size of defendants' brief Plaintiffs earlier briefs in opposition to the motions for summary judgment were 54 and 62 pages.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Facts Regarding Material Damage Claim Representatives and Multiple Line Claims Representatives[*30]

Material Damage Claims Representatives (MDCRs) adjust insurance claims involving damage to automobiles. Plaintiff Pierce is a MDCR.

Multiple Line Claim Representatives (MLCRs) adjust insurance claims involving damage to automobiles and property. Plaintiff Barrett is a MLCR.

Both MDCRs and MLCRs adjust claims made on commercial policies in addition to non-commercial policies.

Plaintiffs admit n11 that MDCRs and MLCRS:

------------------Footnotes---------------

n11 In conjunction with the making of such admissions, plaintiffs contend that the admissions do not provide support for the exemption as plaintiffs actions were performed pursuant to company policy and procedures and were subject to management review. The legal effect of such contention is addressed in another section.

-----------------End Footnotes-------------

Settle some claims without management authority(p.p. 11, 13, 18 of Opposition (# 105);

Convey investigatory findings and make recommendations to managers;

consult with management regarding claims which exceeded plaintiff's settlement authority;

contact claimants including sharing[*31] information with claimants regarding their claims and take claimant statements;

appraise damages and total loss to vehicles;

gather information from claimants regarding "rate evasion and other potential fraud";

meet with witnesses and speak with repair facilities;

review policies to determine coverage;

set reserves (p. 34 if Opposition (# 105));

refer appropriate claims to underwriting;

refer appropriate claims for subrogation;

collaborate with outside experts, fraud investigators, and legal counsel regarding adjusters' findings;

determine whether to repair or replace automobile parts, sometimes with recommendations to managers (p 25 of Opposition (# 105));

Interact with attorneys and attend court hearings, depositions and mediations regarding claims; and

evaluate legal issues by "comparing the law to the facts."(p. 16 1 of Opposition (# 105)).

Plaintiffs do not dispute that MDCRs and MLCRS have a preapproved level of settlement authority, generally between $3,000 and $30,000 per claim, and pay out more than $1,000,000 a year in claims.

MDCRs and MLCRS utilize certain software programs for a portion of their work. MLCR Barret uses, among other programs, Colossus. [*32]

DISCUSSION

Based on the undisputed facts of this action and the law as set forth above, defendants have met their burden of establishing that the CCRs in this action fit within the administrative exemption Defendants have also shown that MDCRs and MLCRs meet at least part of the tests for the administrative exemption.

The First Part of the Administrative Exemption as it Applies to All Categories of CRS

As previously noted, it is undisputed that all categories of CRs meet the "salary basis test" for the administrative exemption. See *29 C F R § 541 2(e)(1)*.

It is also undisputed that all CRs perform primarily "office or nonmanual work." *29 C F R § 541 2*.

The legal analysis set forth above and undisputed facts indicate that the primary duties of all categories of CRs consist of work that is directly related to defendants' management policies and business operations, in that CRs are responsible to carry out or execute defendants' claim adjusting policies on behalf of defendants and their policy holders. *29 C F R § 541 2(a)(1), 541 205(c)*.

All CRs handle more than[*33] $1,000,000 in claims per year, and CRs decisions in determining coverage, setting reserves, identifying and referring fraud, potential subrogation, and underwriting risks, and in negotiating and settling claims can and do have substantial financial impact to defendants and on defendants' policy holders. Consequently, the work of all CRs is of substantial

importance to defendants' business operations and management policies. 29 C.F.R. § 541.205 (a). n12

----------Footnotes----------

n12 "Such rulings based on the particular facts of this case are also generally consistent with the rulings made on the particular facts of Jastremski, Palacio, In re Farmers, and Robinson-Smith,

----------End Footnotes----------

### Discretion and Independent Judgment -- The Administrative Exemption as it Applies to OCRs

The factual admissions set forth above for CCRs are consistent with virtually all of the factual underpinnings of the DOL letter discussed above offering an opinion of exemption. Moreover, such facts are similar to the facts of [*34] Jastremski, Palacio and In re Farmers and those courts found the applicability of the exemption.

Plaintiffs contend that their admissions do not provide support for the exemption as plaintiffs' actions were performed pursuant to company policy and procedures and were subject to management review. However, as defendant correctly notes, virtually every employee in America has one or more managers and must follow company policies, procedures and guidelines. The DOL and the courts have made it absolutely clear that the fact that an employee has his work reviewed, or follows guidelines, does not defeat exempt status under the FLSA. For example, the governing regulations of the FLSA explicitly recognize that:

Discretion and independent judgment' as used in the regulations does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and [*35] that upon occasion the decisions are revised does not mean that the employee is not exercising discretion and independent judgment * * *

29 C.F.R. § 541.207 (e) (1) (emphasis added); see also *McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 1001 (8th Cir. 2003)*. In McAllister, the court held that plaintiff, a claims coordinator for an insurance company, exercised discretion and independent judgment even though she was "required to follow detailed manuals." *325 F.3d at 1001*. According to the court, the "issue is not whether [the plaintiff] had discretion to disregard . . . the claims manuals, but whether he primary duty included the exercise of discretion and independent judgment." Id. Because the plaintiff "independently had to compare and evaluate possible courses of action, and her decisions or recommendations went to matters of significance for the insurance company," she exercised discretion and independent judgement despite her allegations that she was required to follow detailed manuals. Id. See also, *Haywood v. North America Van Lines Inc., 121 F.3d 1066, 1069 (7th Cir. 1997)*[*36] (holding that employee still exercised sufficient discretion and independent judgment despite the company's guidelines and the fact that her work was reviewed).

Although the CCRs used Colussus computer software as part of their job, their doing so was "directly and closely related to the employee's exempt functions" and, therefore, did not affect the CCR's status as exempt employees. See C.F.R. § 541.207(c)(5); *Jastremski, 243 F.Supp.2d at 757* (holding that, under 29 C.F.R. § 541.207 (c) (5), the plaintiff remained an exempt administrative employee because his use of the defendant's computer software programs in his claims handling was ancillary to his job duties involving the use of discretion and independent judgment.)

All other arguments made by plaintiffs as to CCRs have been considered and rejected.

Similar to Judge Jones, I conclude "without hesitation" that CCRs exercise considerable independent judgment and discretion on matters of substantial importance. As such, plaintiff CCRs are exempt administrative employee under the FLSA and cannot invoke *29 U.S.C. § 207(a)(1)* in a claim for overtime pay, [*37] either on behalf of themselves or on behalf of other employees under *§ 216(a)*.

### Discretion and Independent Judgment -- The Administrative Exemption and MDCRs and MLCRs

Defendant argues that given the admissions made by plaintiffs with regard to MDCRS and MLCRs set forth

above, defendants have clearly proved their burden of showing that the MDCRs and the MLCRs performed work that included the use of discretion and independent judgment. However, the legal effect of the admissions is not entirely clear at this point, especially in light of potential factual issues on this matter. There are questions as to whether the potential factual issues are genuine, and if so, whether they are material.

Although plaintiffs admit that MDCRs and MLCRs settle some claims without management authority, plaintiffs argue that this only happens when the estimate from the computer program is within authority levels and when the insured accepts that exact amount. Plaintiff MDCRs and MLCRs contend that if this wasn't the case, they would have to get management approval for a settlement in excess of the computer driven amount, even if that amount was within their settlement authority. Although such[*38] a situation would not necessarily be fatal to defendants' motion, such does not seem consistent with the underlying facts of the DOL letter and Jastremski and Palacio. In support of their contention, plaintiffs have cited the partial deposition transcripts of Pierce at p. 87 and p. 82 (Plaintiff's Exh 5) and of Barret at 244. (Plaintiffs' Exh. 4).

The court also questions whether MDCR Pierce was negotiating and settling bodily injury claims and, if so, how that would affect the analysis of using discretion and independent judgment. (See Pierce claim log entries at Exh. L to affidavit of Parlow in support of supplemental response.) The court has the same general question with regard to MLCR Barret, and, further, how his use of Colossus affects the analysis.

In distinguishing In re Farmers, defendants note that the plaintiffs in the present action handled claims involving unique vehicles and boats without any computer estimating tool and contend that such is a clear exercise of discretion and independent judgment. However, defendants failed to note that Auto Physical Damage CRs in In re Farmers could not use computers and had to manually put together estimates for antique, [*39] specialty and older automobiles and were still found not exempt. Similarly, plaintiffs lossed over the fact that commercial policies were adjusted in the present case, but not in In re Farmers.

And there is also the matter of the effects of the too recent to be briefed Robinson-Smith case. As such, defendants shall have 11 days to provide supplemental briefing on the foregoing matters, and plaintiff shall have 11 days thereafter to respond. The briefs shall not exceed 10 pages, shall not argue the determinations of undisputed facts and the legal rulings already made in this opinion, and shall not rely on evidence from CCRs or others to prove matters regarding MDCR Pierce and MLCR Barret unless it is demonstrated why doing so would be appropriate.

All references made by the parties to the factual records should not be conclusory, but shall be accompanied by specific citation, including page numbers and docket numbers. In most situations, the supporting quotations shall also be set forth.

CONCLUSION

Defendant's motion (# 33) for summary judgment is allowed in that CCRs are exempt from the overtime requirements of the FLSA and, as such, FLSA and ERISA claims involving[*40] the CCRs are dismissed.

Defendants' motions (# 84) to strike are denied as moot as this court did not rely on the allegedly objectionable evidence in its ruling.

Plaintiffs' motion (# 47) for order to approve sending notice of "Opt in" opportunity to all those similarly situated is denied without prejudice to refile, if appropriate, after the court rules n the remaining motions for summary judgment. If it is appropriate to refile at that time, the motion shall be new and updated to reflect the court's rulings.

Defendants shall have 11 days to provide supplemental briefing regarding defendants' motion (# 64) for summary judgement as set forth above and plaintiffs shall have 11 days to reply as set forth above.

DATED this 18th day of August, 2004.

THOMAS M. COFFIN

United States Magistrate Judge

CONCURBY: Assigned to: Magistrate Judge Thomas M Coffin